THE CLEVELAND, CINCINNATI, CHICAGO AND ST. LOUIS RAILWAY COMPANY, Appellee, *vs.* THE STATE PUBLIC UTILITIES COMMISSION *et al.*—(THE CAIRO AND ST. LOUIS RAILWAY COMPANY *et al.* Appellants.)

*Opinion filed April 20, '16—Petition for rehearing denied June 9, '16.*

1. PUBLIC UTILITIES—*right of one public utility to assign cross-error on appeal by another.* Where an order of the Public Utilities Commission directing a separation of grades at the crossing of a railroad company with a public street and requiring the railroad company to pay 65 per cent of the cost, the city to pay 15 per cent and a street railway company to pay 20 per cent is reversed by the circuit court as unreasonable in not requiring any contribution by an interurban company using the street railway company's tracks, the railroad company may assign cross-error, on appeal by the interurban company, and urge that the order for separation of grades is unreasonable, and also that the interurban company should have been required to pay two-thirds of the cost of such separation.

2. SAME—*whether it is reasonable to require a separation of grades is a question of fact.* Whether it is reasonable to require a

separation of grades at the crossing of a railroad with a public street is a question of fact depending upon the particular circumstances, including the amount of travel on the street, the present elevation of the tracks above the street grade, the financial condition of the railroad company, the cost of the work required, and other matters, and no general rule can be laid down which will govern all cases.

3. SAME—*what does not render unreasonable an order for separation of grades.* An order of the Public Utilities Commission, entered on the petition of a city, requiring a railroad company to elevate its tracks and construct a bridge across a street is not rendered unreasonable because the elevation of the tracks will require raising the grade of the tracks at another street for which no provision has been made by the city, as the Public Utilities Commission has power to adjust any controversy that may arise between the railroad company and the city in regard to such matter and to order the raising of the grade at such street.

4. SAME—*when no portion of cost of grade separation can be assessed against an interurban company.* Where the State Public Utilities Commission orders a separation of grades at the crossing of a railroad company with a public street on which there is a street railway, it is proper, in apportioning the cost of such separation, to make no assessment against an interurban company which is using the tracks of the street railway company as a mere licensee, although the commission may take the fact of such permissive use into consideration in fixing the street railway company's proportion of the cost and make such proportion larger than it otherwise would.

APPEAL from the Circuit Court of Sangamon county; the Hon. FRANK W. BURTON, Judge, presiding.

P. J. LUCEY, Attorney General, EVERETT JENNINGS, and GEORGE M. MORGAN, for the State Public Utilities Commission.

WM. S. DEWEY, and HARRY HOOD, for city of Cairo.

GREEN & PALMER, for other appellants.

GEORGE B. GILLESPIE, (GILLESPIE & FITZGERALD, and L. J. HACKNEY, of counsel;) for appellee.

Mr. Justice Cooke delivered the opinion of the court:

The State Public Utilities Commission, upon the petition of the city of Cairo, ordered a separation of grades at the crossing of the main track of the Cleveland, Cincinnati, Chicago and St. Louis Railway Company (hereinafter referred to as the railway company) with Sycamore street, and ordered that the railway company pay sixty-five per cent of the cost thereof, the city fifteen per cent, and the Cairo Electric and Traction Company, (hereinafter referred to as the traction company,) the owner of a street railway track laid in Sycamore street, the remaining twenty per cent. The railway company appealed to the circuit court of Sangamon county, and the order of the commission was set aside on the ground, as stated in the judgment of the court, that the order of the commission is unreasonable, in that it does not require the Cairo and St. Louis Railway Company, an interurban railway operating cars upon the track of the traction company in Sycamore street, to pay any portion of the cost of separating the grades. From the judgment of the circuit court this appeal has been prosecuted by the Cairo and St. Louis Railway Company and the city of Cairo.

The Cairo and St. Louis Railway Company (hereinafter referred to as the interurban company) urges a reversal of the judgment on the ground that the circuit court erred in setting aside the order of the commission on the ground stated in the judgment, and the city of Cairo complains that the court erred in ordering that the costs of the proceeding be taxed against the city. The railway company has assigned cross-errors, under which it contends that the order of the commission should have been set aside not only on the ground stated in the judgment of the circuit court, but on the additional grounds that the order requiring a separation of grades is unreasonable, and that the order should have required the Cairo and St. Louis Railway Company to

pay two-thirds of the total cost of the grade separation, as provided in the Railway Crossings act.

Sycamore street is the main thoroughfare leading from the northern limits of the city of Cairo south to the business district of the city. The main track of the railway company crosses this street upon an embankment which is about eight feet higher than the surface of the street both north and south of the crossing. This track was laid about 1886 under permission granted by the city of Cairo. The traction company operates a street railway system in the city of Cairo. One of its tracks upon which it operates cars is, and has been for a number of years, laid in Sycamore street, crossing the track of the railway company. The Cairo and St. Louis Railway Company is an interurban electric railway, organized under the Railroad Incorporation act, and operates a line of railway extending north from the city of Cairo to Mounds, a distance of about nine miles. Its cars are operated in the city of Cairo upon the tracks of the traction company, including the track laid in Sycamore street, under and by virtue of a lease or contract between it and the traction company, the terms and provisions of which are not disclosed by the evidence. The lease or contract was made with the permission of the city of Cairo granted in the franchise ordinances of the two companies, both of which were passed November 18, 1908. The franchise ordinance of the traction company authorized it to "permit the Cairo and St. Louis Railway Company, its successors, lessees and assigns, to use and operate over said railways of grantee herein," and the franchise ordinance of the interurban company granted to that company the right, permission and authority, "with the consent of the Cairo Electric and Traction Company, its successors or assigns, to use in the operation of said railway and railway cars, if and as desired, the tracks, power, wires, equipment and appliances of said Cairo Electric and Traction Company" upon certain streets, including Sycamore street.

On April 12, 1910, the Cairo city council passed an ordinance for the improvement of Sycamore street by the construction of a brick pavement from a point several blocks south of the railroad crossing to the northern limits of the city. By this ordinance the elevation of Sycamore street at the crossing with the tracks of the railway company was lowered 10.63 feet. Thereafter, by an ordinance passed May 5, 1910, the railway company was ordered to elevate its track above and across the surface of Sycamore street so as to provide a clearance space between the bottom of the bridge on which its track should be laid and the surface of the street, according to the grade established by the ordinance of April 12, 1910, of not less than 13.91 feet. The paving of Sycamore street under the ordinance of April 12, 1910, was completed except at the crossing of the street with the track of the railway company and those portions of the street extending about 300 feet south and 600 feet north from the crossing, which were not improved because of the failure of the railway company to comply with the ordinance of May 5, 1910.

On August 14, 1914, the city filed its petition with the State Public Utilities Commission praying for an order requiring the railway company to construct and maintain at its own cost an overhead bridge or subway in accordance with the requirements of the ordinance of May 5, 1910. The railway company answered the petition, admitting that a grade separation is practicable, but alleging that the same cannot be accomplished without great injury to the railway, and that it would impose upon the company a great expense, which would be entirely disproportionate to the benefits which would accrue to it. It also filed a cross-petition, alleging that the separation of grades would be of great advantage to the city, and if made would result in furnishing to the citizens of the city a safe and convenient mode of travel across the railroad right of way without subjecting them to the dangers incident to passing over the track; that

there is a large volume of travel upon Sycamore street, the movements and travel of the citizens being vastly in excess of the travel and train movements upon the railway; that the Cairo Electric and Traction Company has a single track located on Sycamore street upon which it operates street cars every few minutes, and that a grade separation would result in greater benefit to the traction company than to the railway company; that the Cairo and St. Louis Railway Company is organized under the general railroad laws of the State; that it now operates its railway over the tracks of the traction company at said crossing, but may, under the provisions of its franchise, maintain upon Sycamore street a double-track railway; that it has never applied to the commission nor to its predecessor, the Railroad and Warehouse Commission, for permission to locate its tracks across the tracks of the railway company, as it was required by the statutes of this State to do; that it is constantly operating cars over said crossing, and the benefits which it will derive from a separation of grades will greatly exceed the benefits to the railway company. The prayer of the cross-petition was that if a grade separation be made, the commission fix and apportion the expense thereof upon an equitable basis among the several parties.

The evidence taken before the commission shows, and the commission in its order found, that Cairo is a city of 17,000 population; that Sycamore street is the only highway leading to and from the city of Cairo which is open for traffic and traversable during the entire year; that there are many factories and industries located just north of the tracks of the railway company and that Sycamore street is the only highway which leads to and from these factories and industries; that a number of accidents resulting in injuries to persons and damage to property have occurred at the crossing of the tracks of the railway company with Sycamore street; that the crossing is dangerous and that safety requires the abolition of the grade crossing and the

elevation of the tracks of the railway company. The commission further found that the approximate cost of the separation of grades, including the elevation of the track of the railway company for a distance of 3130 feet and the construction of a bridge spanning Sycamore street, would be $46,679, and, as hereinbefore stated, ordered that the railway company pay sixty-five per cent of the cost, the city fifteen per cent and the traction company twenty per cent.

Appellants contend that the cross-errors assigned by the railway company cannot be considered, and in support of this contention cite a line of cases beginning with *Walker* v. *Pritchard,* 121 Ill. 22, wherein it is held that where different parts of a decree relate to matters wholly independent of each other, so that the decision as to one part has no influence or bearing upon the decision as to the other part, they are severable, and, in effect, distinct decrees, and cross-errors cannot be assigned as to the part of the decree not brought before the court by appeal. This rule has no application to the case at bar. Any order or finding relating to the apportionment of the expense of a grade separation among the parties is wholly dependent upon the order that the grades be separated. The railway company therefore has a right, under the statute, to assign cross-errors. (Hurd's Stat. 1913, chap. 110, sec. 107.)

The railway company, under its cross-errors, contends that the order of the commission requiring a separation of grades is unreasonable (1) because the volume of traffic and train movements over this crossing are not sufficient to render the crossing so dangerous as to require a separation of grades; (2) because the financial condition of the railway company is such that it should not be subjected to this expense at this time; and (3) because the railway company, in order to provide a reasonable grade west of the crossing, will be compelled to raise the grade of its tracks at Washington street, which is about 1080 feet west of Sycamore street, and no authority has been conferred upon the railway

company, either by ordinance or by order of the commission, to raise the railroad grade across Washington street.

Whether it is reasonable to require a separation of grades is a question of fact, and no general rule can be laid down by which the question can be determined in all cases. The principal matters to be considered in each case are, whether the crossing, either because of its peculiar nature or surroundings or because of a large volume of traffic over it, is unusually dangerous, and the question of the cost of adjusting the remainder of the railroad right of way and properties to the proposed grade at the crossing. The volume of traffic over this crossing is no greater than that over many other grade crossings where it would be unreasonable to require a separation of grades. The crossing of the railroad track with Sycamore street is, however, rendered unusually dangerous by reason of the fact that the track is laid upon an embankment about eight feet above the natural surface of the street, which necessarily renders the crossing more dangerous than one where railroad tracks cross a street or public highway on a grade approximately corresponding with the natural grade of the street or highway; and this situation also renders it possible to separate the grades without requiring the expenditure of any such sum as is required for the separation of the grades where the tracks cross on the natural grade of the street or highway. It appears from the evidence offered by the railway company and from the order of the commission that the change of grade will merely necessitate the construction of a bridge across Sycamore street and the raising of the grade of the railroad tracks for a distance of a little more than 3100 feet; that this will provide a reasonable and practical gradient for the operation of trains and that the entire cost will amount to but $46,679. The evidence shows, and the railway company by its cross-petition admits, that for a city of 17,000 population there is a large amount of travel over this crossing throughout

the year.  Under these circumstances we cannot hold that the order of the Public Utilities Commission requiring a separation of grades is unreasonable.

While the financial condition of the railway company is a matter which should be also considered in this class of cases, the showing made by the railway company upon this question falls far short of convincing us that the imposition of this expense upon the railway company will result in any hardship to the company.

With reference to the crossing at Washington street, it is sufficient to say that the separation of grades at Sycamore street was ordered upon the petition of the city of Cairo.  The plan upon which the estimate of cost made by the commission was based contemplated the raising of the grade of the track at Washington street.  The commission retains jurisdiction of this matter, and should any controversy arise between the railway company and the city concerning the railroad grade at Washington street, it will be the duty of the commission, upon application by the railway company, to make an order permitting the railway company to raise the grade of its track at Washington street to such height as will provide a reasonable and practical grade for the operation of trains west of Sycamore street.

The interurban company contends that the circuit court erred in setting aside the order of the commission on the ground that some portion of the cost of the grade separation should have been imposed on the interurban company. The interurban company is not the owner of any tracks at this crossing.  It operates its cars over the crossing merely with the consent and by permission of the traction company, the owner of the street railway tracks in Sycamore street. The nature and terms of the agreement under which it operates its cars over the tracks of the traction company are not disclosed by the evidence.  That it is not a lessee of these tracks in a strict legal sense appears from the fact that the traction company is operating its cars thereon,

which is inconsistent with the theory that the rights of the interurban company are those of a lessee. The interurban company, in its brief and argument, states, and the facts and circumstances appearing in evidence tend to show, that the interurban company is using these tracks under a license which is revocable at will. The mere fact that it is operating cars over the crossing upon tracks belonging to and used by the traction company would not render the interurban company liable to pay any portion of the cost of a grade separation. Any such expense, in the absence of an agreement between the interurban company and the traction company, must be borne by the traction company, and the existence of such an agreement would be a matter wholly between the interurban company and the traction company. The State Public Utilities Commission in fixing the proportion of the cost of the grade separation to be paid by the traction company should, and undoubtedly did, take into consideration the fact that the traction company was permitting the interurban company to use its tracks over this crossing, and assessed a larger proportion of the cost of the grade separation against the traction company than it otherwise would have assessed against it. This was the proper course for the commission to pursue. An order assessing any portion of the cost of the grade separation against the interurban company could not be sustained. The circuit court erred in setting aside the order of the commission on the ground stated in its judgment.

As the order of the commission should have been affirmed, it necessarily follows that the court erred in ordering the costs to be taxed against the city of Cairo. The costs should be taxed against the railway company.

The judgment of the circuit court is reversed and the cause is remanded to the circuit court, with directions to affirm the order of the State Public Utilities Commission and to order that the costs of the proceeding be taxed against the railway company.

*Reversed and remanded, with directions.*