(No. 11294.—Reversed and remanded.)

THE CHICAGO, BURLINGTON AND QUINCY RAILROAD COMPANY, Appellant, *vs.* MARIE T. CAVANAGH *et al.* Appellees.

*Opinion filed April 19, 1917—Rehearing denied June 8, 1917.*

1. PUBLIC UTILITIES—*averment that petitioner operates a railroad is sufficient to show it is a public utility.* In a petition for the taking of property for the re-location of a railroad in pursuance of an order of the Public Utilities Commission, an allegation that the petitioner owns and operates a railroad is a sufficient averment that its railroad is a public utility within the jurisdiction of said commission.

2. SAME—*Public Utilities Commission may order such physical changes as may be necessary to promote public safety.* The question whether a grade crossing shall be abolished where the public safety requires it is one which may be left to an administrative body, such as the Public Utilities Commission, for its decision under the circumstances of each particular case, subject to review by the courts as to the reasonableness of its conclusion, and the commission may require such physical changes in the property as may be necessary.

3. SAME—*plan adopted by Public Utilities Commission to promote public safety is presumed to be proper and feasible.* Where the Public Utilities Commission, after a hearing and investigation, determines that changes which will promote the safety of the public shall be accomplished by the re-location of railroad tracks it

278 – 39

is to be presumed that the plan adopted is a proper and feasible method of securing public safety.

4. Same—*a railroad company cannot re-locate its tracks upon a new right of way without statutory authority.* Where a railroad company is invested with power to take property for the original construction of its road that power is exhausted by the original location, and the company has no right to re-locate its tracks upon a new right of way without statutory authority.

5. Same—*Public Utilities Commission may order the exercise of power of eminent domain to re-locate railroad track.* The General Assembly may lawfully delegate to the Public Utilities Commission the right and duty to exercise, or compel the exercise, of the power of eminent domain to secure public safety, and the right of the commission to order the exercise of such power to re-locate a railroad track to promote the public safety is necessarily implied.

6. Same—*land owners need not be notified of hearing before the Public Utilities Commission.* The provisions of section 60 of the Public Utilities act relate only to notice or service of an order upon some person or corporation either complained of or required to do something or to comply with some order, rule or regulation of the Public Utilities Commission, and although the hearing before said commission results in an order upon a railroad company to exercise the power of eminent domain in re-locating its tracks, the land owners thereby affected need not be notified of such hearing nor served with a certified copy of the order.

7. Eminent domain—*power of eminent domain is inherent in every government.* The power of eminent domain to take or authorize the taking of property for the public use without the owner's consent is inherent in every government, and in this State the right of the owner, as against the public, is protected only to the extent that his property cannot be taken or damaged for public use without just compensation, which, when not made by the State, must be ascertained by a jury.

8. Same—*legislature has the right to delegate the power of eminent domain.* The right to take or authorize the taking of private property for public use is legislative in its nature, and property can be taken only by exercise of the power directly by the General Assembly or by delegation in express terms or by necessary implication.

9. Same—*to whom power of eminent domain may be delegated.* The General Assembly may delegate the power to take private property for public use to municipal corporations, governmental subdivisions, public service corporations, public officers, boards of trustees, managers of State institutions, county commissioners, and

to administrative boards or officers, such as school officers, commissioners of highways, county boards, park commissioners or others exercising similar powers.

10. Same—*property owner may question whether use is public or private and whether the power is to be exercised for purpose for which it is conferred.* In eminent domain proceedings the property owner has the right to a determination of the question whether the proposed use is public or private and whether the power is to be exercised for the purpose for which it is conferred.

Appeal from the Circuit Court of Henry county; the Hon. Emery C. Graves, Judge, presiding.

Robert C. Morse, Charles E. Sturtz, and Fred H. Hand, (Chester M. Dawes, J. A. Connell, and J. C. James, of counsel,) for appellant.

Nels F. Anderson, Thomas J. Welch, John T. Cummings, and Henry Waterman, for appellees.

Mr. Justice Cartwright delivered the opinion of the court:

The appellant, the Chicago, Burlington and Quincy Railroad Company, owning and operating a railroad between and through the cities of Kewanee and Galva, in Henry county, filed its petition in the circuit court of that county by which it alleged that on January 19, 1916, the State Public Utilities Commission, after notice to the petitioner and investigation of the existing conditions, found that the public convenience and safety required a re-location of the petitioner's railroad tracks between Kewanee and Galva, and ordered the petitioner to re-locate its tracks so that the center line of the northerly main track should follow a certain course particularly described in the order, across lands in township 14, north, range 4, among which were lands of the appellees; that the petitioner should carry the highway between sections 26 and 27 and the highway between sections 24 and 13 over and across its tracks on viaducts or

bridges of steel, or steel and cement, or other suitable fire-proof bridge material, and should carry its tracks over the highway between sections 23 and 24 by a bridge or via-duct of steel, or steel and cement, or other suitable fire-proof bridge material; that the petitioner should make such changes in the location of its existing right of way as might be necessary to comply with the order, and should acquire, either by purchase or the exercise of the right of eminent domain, whatever property might be necessary for the pur-pose, and should carry out the order within twelve months at its own expense and cost; that for the purpose of com-plying with the order it was necessary to acquire a right of way across the lands of the appellees, and that the petitioner had been unable to agree with them, or any of them, on the compensation to be paid to them for their respective inter-ests in the premises. The appellees were made defendants to the petition, and it prayed that the compensation to be paid to them for their respective interests in the premises should be ascertained and determined in the manner pro-vided by law. A demurrer to the petition was overruled, and numerous motions for the abatement of the suit and the dismissal of the petition were made and overruled, and the cause was set for hearing with a jury to determine the amount of compensation to be paid to the defendants. The cause coming on for trial, the court set aside the previous orders denying motions to dismiss the petition, by which it had been held that the order of the State Public Utilities Commission authorized the petitioner to acquire, by the ex-ercise of the power of eminent domain, the new right of way specified in the order of the State Public Utilities Com-mission, and the court again considered the eleventh para-graph of the motion previously filed, which had been denied. That paragraph was as follows:

"*Eleventh*—These defendants further deny that said purported order conferred upon said petitioner any author-ity whatsoever to institute or prosecute these proceedings."

The court then entered an order finding that the petitioner had neither by the law creating the State Public Utilities Commission nor by any order made by the commission acquired any right or power to proceed by eminent domain to acquire the property described in the petition, sustaining the said eleventh paragraph and dismissing the petition at the petitioner's cost. The petitioner appealed, assigning for error the sustaining of the eleventh paragraph and finding that the order of the State Public Utilities Commission gave the petitioner no right or power to maintain the action and dismissing the petition.

The petition alleged that the petitioner owned and operated a railroad, and that was a sufficient averment that its railroad was a public utility within the jurisdiction of the State Public Utilities Commission. The arguments against the right to maintain the action are that the Public Utilities act does not confer jurisdiction on the State Public Utilities Commission to require the re-location of existing railroad rights of way, and that the defendants were neither notified to be present at the hearing before the commission nor was any certified copy of the order served on them, so that they might appear before the commission and have a hearing on evidence as to the reasonableness of the order, and, upon failing to have the order modified or set aside, might appeal to the circuit court of Sangamon county, and in case the order was confirmed, prosecute a further appeal to this court.

Section 50 of the Public Utilities act authorizes the commission, after a hearing or upon its own motion or upon complaint, to make and serve an order directing that additions, extensions, repairs, improvements or changes shall be made in any existing plant, equipment, apparatus, facilities or other physical property of any public utility which ought reasonably to be made to promote the security or convenience of the employees or the public or in any other way to secure adequate service or facilities. Section 58 of the act prohibits future grade crossings of railroad tracks without

first securing the permission of the commission, and gives the commission power, after a hearing, to alter or abolish any grade crossing when in its opinion the public safety requires such alteration or abolition, or to require a separation of grades at any such crossing, and to prescribe the terms upon which the separation shall be made and the proportions in which the expenses shall be divided between the railroad. or street railroad company and the State, county, municipality or other public authority in interest. The finding of the commission was merely that the public convenience and safety required a re-location of the tracks, but it appears that the order will result in the construction of a viaduct and bridges at highway crossings.

The question whether a grade crossing shall be abolished where the public safety requires it is one which may be left to an administrative body, such as the utilities commission, for its decision under the circumstances of each particular case, subject to review as to the reasonableness of its conclusion as provided in the act. (*Cleveland, Cincinnati, Chicago and St. Louis Railway Co.* v. *Public Utilities Com.* 273 Ill. 210; *Alton and Southern Railroad* v. *Vandalia Railroad Co.* 268 id. 68.) Considering sections 50 and 58 together, it is apparent that the General Assembly intended to confer upon the commission power, where the public safety requires the abolition of grade crossings or any other change such as a re-location of a railroad track, to require such physical changes in the property as may be necessary to make the power effective. In the case now presented, the utilities commission, after a hearing and investigation, determined that changes in the existing railroad which would promote the safety of the public should be accomplished by the re-location of the railroad, and it is to be presumed that the plan adopted was a proper and feasible method of securing the public safety. That the method adopted was reasonable is not questioned by the petitioner, upon which was imposed the burden and expense of complying with the

order, and unless the defendants, upon whom no burden was cast and who were not required to do anything, could question the reasonableness of the order it must be regarded as valid if the General Assembly could invest the commission with power to make any order requiring the taking of property.

The next question is whether the petitioner can exercise the power of eminent domain by virtue of the order of the commission, and it is contended that it could only exercise such power if it already had it, and that the only effect of the order would be to compel the petitioner to condemn property where it already had the power. The petitioner was invested with power to take property for the original construction of its railroad, but the power was exhausted by the original location and it had no right to re-locate its tracks upon a new right of way without statutory authority. (*Cairo, Vincennes and Chicago Railway Co.* v. *Woodyard,* 226 Ill. 331.) The General Assembly might at any time confer such power by a general act, but it has not been done, and if the petitioner has the power it is because of the order of the utilities commission. The power of eminent domain to take or authorize the taking of any property within its jurisdiction for the public use without the owner's consent is inherent in every government. In this State the right of the owner, as against the public, is protected only to the extent that his property cannot be taken or damaged for public use without just compensation, which, when not made by the State, must be ascertained by a jury. The right to take or authorize the taking of private property for public use is legislative in its nature, and property can only be taken by exercise of the power directly by the General Assembly or by delegation in express terms or by necessary implication. The General Assembly may delegate the power to take private property for public use to municipal corporations, governmental subdivisions or public service corporations, and also to public officers, boards of trustees, mana-

gers of State institutions, county commissioners and other like boards and officers. (15 Cyc. 574.) It is lawfully delegated to administrative boards or officers, such as school officers, commissioners of highways, county boards, park commissioners or others exercising similar powers. The General Assembly might lawfully delegate to the utilities commission the right and duty to exercise or compel the exercise of the power of eminent domain to secure public safety, and, although not expressly conferred, the right and duty were necessarily implied, because if the petitioner had no right to take property for the proposed change it would be powerless to comply with the order, and the General Assembly could not have contemplated or intended such a result. The commission having been empowered to make the order, everything essential to require and insure compliance with it was necessarily included. The construction of the statute contended for would defeat its intention and practically destroy the power of the commission to secure the public safety by abolishing grade crossings in any case involving the taking of additional property.

The remaining proposition advanced in support of the judgment is that the defendants were neither served with notice of the hearing or investigation nor with a certified copy of the order, so that they might contest it before the commission and appeal from the order. Counsel say they make no complaint that the defendants were not notified to be present at the hearing or investigation but do complain that they were not served with a certified copy of the order, so that they could seek to have it modified or set aside, and, not succeeding in that, might appeal. Section 60 and subsequent sections of the statute relate to proceedings before the commission and in the courts, and provision is therein made for notice of a complaint to the person or corporation complained of, and for service of every order of the commission upon persons or corporations to be affected thereby, and for an appeal to the circuit court of Sangamon county

by any person or corporation affected by a rule, regulation, order or decision made by the commission. These provisions relate only to notice or service of an order upon some person or corporation either complained of or required to do something or to comply with some order, rule or regulation. The order of the commission did not amount to an appropriation of the defendants' property or any interest in it, which could only be accomplished by the filing of a petition and the ascertainment and payment of compensation for the property, so that there was no violation of the due process provision of the constitution. The defendants were not deprived of their property, nor of any interest therein, by the mere making of the order, which neither gave the petitioner any interest in or right to possession of the property. The General Assembly has unlimited power to take private property for public use, or to authorize it to be taken, upon making compensation, reserving to the property owner the right to contest the question whether the proposed use is public or private and whether the power is to be exercised for the purpose for which it was conferred. (*Chicago and Northwestern Railway Co.* v. *Galt,* 133 Ill. 657; *Ligare* v. *City of Chicago,* 139 id. 46.) There was no more necessity of notifying the defendants of the hearing or serving them with a certified copy of the order than there would be in any case of notifying owners of land that the power of eminent domain was about to be conferred upon a corporation or administrative board or officer where the exercise of the power would require the taking of their property. The persons and corporations affected by the order are those upon whom the statute imposes a penalty for failure to comply with the order.

Neither of the reasons given to sustain the judgment of the trial court is well founded, and the judgment is reversed and the cause remanded, with directions to ascertain the just compensation to be paid to the defendants for the purposes specified in the petition.

*Reversed and remanded, with directions.*