ILLINOIS POWER COMPANY, Plaintiff-Appellee, *v.* CHESTER D. LYNN *et al.,* Defendants.—(EMERSON W. MILLER *et al.,* Defendants-Appellants.)

Fourth District   No. 13979

Opinion filed July 5, 1977.

Jeffrey C. Taylor, of Owen, Roberts, Susler & Taylor, of Decatur, for appellants.

E. Wayne Schroeder and Nicholas J. Neiers, both of Samuels, Miller, Schroeder, Jackson & Sly, of Decatur, for appellee.

Mr. JUSTICE HUNT delivered the opinion of the court:

This is an action brought by Illinois Power Company, plaintiff, to acquire certain tracts of land by eminent domain pursuant to authority granted to it by the Illinois Commerce Commission in a certificate of convenience and necessity and an enabling order. Emerson and Bessie Miller (hereinafter referred to as defendants), owners of a tract of land sought to be condemned, filed a motion to dismiss and traverse. The trial court denied the motion, finding the question of public need for this tract had been resolved in the hearing before the Illinois Commerce Commission, in which defendants actively participated as parties. Leave to appeal from this interlocutory order was granted pursuant to Supreme Court Rule 308. Ill. Rev. Stat. 1975, ch. 110A, par. 308.

The question on appeal is: Does the Illinois Commerce Commission's finding that the needs and plans of the utility constitute a "public use," and that certain properties need be acquired to develop those plans, preempt the courts from inquiring into these same subject matters, where the property owners fully participated as a "party" before the Commission?

■■ The State has the power directly to acquire private property for public use upon payment of just compensation. (Ill. Const. 1970, art. I, §15; Ill. Rev. Stat. 1975, ch. 47, par. 1 *et seq.*) It also may delegate these powers to branches of the State government, to municipalities and to private corporations such as railroads and utilities. This is a function of the legislative branch. The development of a program and the authorization to acquire private lands by eminent domain are also legislative. To this end planning must be done, by those knowledgeable in the area of concern, with input permissible by others who may be affected by the program.

For example, if a city seeks to build a public building for a public use on privately owned property, the city council will appoint a commission to explore the needs and develop plans. Public hearings may be held. Recommendations are then made to the city council which enacts an ordinance. The statement of public use and the required area of land are set out in the ordinance. Condemnation proceedings follow. The property owner has a right to file a motion to dismiss and traverse, challenging the question of public use and the extent of property to be taken. In this way the landowner is protected from arbitrary taking of private property for nonpublic uses.

In a more sophisticated manner, this basic pattern is found in the Public Utilities Act (Ill. Rev. Stat. 1973, ch. 111 2/3, par. 1 *et seq.*). Section 55 (Ill.

Rev. Stat. 1973, ch. 111 2/3, par. 56) provides that no utility shall begin the construction of a new plant or facility without first obtaining a certificate of convenience and necessity. Section 50 (Ill. Rev. Stat. 1973, ch. 111 2/3, par. 50) provides after a hearing the Commission shall made and serve an order authorizing the structures to be erected on the location in the manner and within a time specified.

Section 59 (Ill. Rev. Stat. 1973, ch. 111 2/3, par. 63) authorizes the utility, armed with the certificate and order, to use the power of eminent domain through the courts to acquire the land necessary for the project. Section 67 (Ill. Rev. Stat. 1973, ch. 111 2/3, par. 71) provides for a rehearing or modification of orders, and section 68 (Ill. Rev. Stat. 1973, ch. 111 2/3, par. 72) provides for an action to set aside the orders by petition for rehearing and procedures in circuit court by way of appellate review. Failure to take a court appeal shall be deemed to have waived the rights to have the merits of the controversy reviewed by the courts. This section further provides: "[T]here shall be no trial of the merits of any controversy in which such * * * order * * * was made, by any court to which application may be made for a writ to enforce the same, or in any other judicial proceedings."

In the instant case, the defendant property owners participated fully in the Commission hearings, in person and by counsel. The order was entered approving the project and including defendants' land as part of the "location." Defendants did not seek a rehearing or attempt an appeal under section 68. The question is: Are they now barred from requiring the utility to prove use and need for acquiring the defendants' land by filing a motion to dismiss and traverse in the eminent domain proceeding? No Illinois cases can be found squarely in point.

The utility argues the provisions of the Public Utilities Act, above, afford the property owner a full hearing on the question of public use and need for defendants' property, that, having participated and not appealed, defendants may not collaterally attack the order of the Commission. The trial court agreed. The utility relies on the following cases in addition to the statutory provisions, namely: *Peoples Gas Light & Coke Co. v. Buckles* (1962), 24 Ill. 2d 520, 182 N.E.2d 169, *appeal dismissed* (1962), 371 U.S. 185, 9 L. Ed. 2d 227, 83 S. Ct. 266; *Illini Coach Co. v. Illinois Commerce Com.* (1951), 408 Ill. 104, 96 N.E.2d 518; *Chicago North Shore & Milwaukee R.R. Co. v. City of Chicago* (1928), 331 Ill. 360, 163 N.E. 141; and others.

In *Peoples Gas Light & Coke Co.*, the property owners received notice of the Commission hearings but did not participate. Trial was held under the eminent domain proceedings without a motion to dismiss and traverse. On appeal, the owners attempted to attack the order of the Commission because it lacked the requisite findings. The supreme court stated that, since the owners had declined to participate or seek review by

statutory procedures, they were estopped from attacking the order of the Commission for alleged want of requisite findings. The supreme court in its opinion stated:

"Next defendants urge that the enabling order of the Commerce Commission is void because it is not supported by the requisite findings. However, orders of the Commerce Commission which are within its statutory authority are not void but voidable only, [citations] and such orders are not subject to collateral attack. [Citations.] The defendants in this case were notified of the Commerce Commission proceedings but did not take part therein nor contest the order of the Commission by direct appeal. They cannot now collaterally attack the order." 24 Ill. 2d 520, 528, 182 N.E.2d 169, 174.

Similar holdings resulted in *Illini Coach* where the certificate of convenience and necessity was awarded to a competing line and Illini Coach participated. So also in *Chicago North Shore & Milwaukee R.R.* where the issue was the railroad's rights to use the city-owned tracks by agreement approved by the Commission, in which the city participated. The utility also cites several rate cases where the railroads participated.

Defendants, on the other hand, rely upon several condemnation cases. These include *Inter-State Water Co. v. Adkins* (1927), 327 Ill. 356, 158 N.E. 685, *Limits Industrial R.R. Co. v. American Spiral Pipe Works* (1926), 321 Ill. 101, 151 N.E. 567, *Chicago, Burlington & Quincy R.R. Co. v. Cavanagh* (1917), 278 Ill. 609, 116 N.E. 128, and others. In each, there had been a hearing before the Commission or its predecessor and a certificate of convenience and necessity and an enabling order issued requiring acquisition of land by condemnation. The records in each of these opinions are silent as to the notice to owners or their participation or lack thereof in the hearings before the Commission.

In *Inter-State Water*, a motion to dismiss and traverse was heard and resolved against the owners. The supreme court stated:

"Appellant made application to the Commerce Commission for permission to condemn the land in question. The commission issued a finding that the condemnation of the land was necessary. The matter, however, does not rest there, as the necessity for public use is a question for the court and the findings of the commission are not conclusive. (*Limits Industrial Railroad Co. v. American Pipe Works*, 321 Ill. 101.) * * * The rule is, that a public utility seeking to condemn land for a public improvement must in a modified degree be permitted to judge for itself as to the amount of land necessary for its purpose, and if it acts in good faith and shows a reasonable necessity for condemnation its discretion will not be disturbed." 327 Ill. 356, 360, 158 N.E. 685, 686.

In *Limits*, several owner-defendants successfully pursued their motion to dismiss and traverse and all were dismissed except American Spiral Pipe Works. So also in *Chicago, Burlington & Quincy R.R. Co. v. Cavanagh.*

In *Illinois Power Co. v. Walter* (1966), 75 Ill. App. 2d 432, 220 N.E.2d 755, two utilities were competing to serve a unit of A.T.&T. Illinois Power sought and received the certificate of convenience and necessity and the enabling order. Egyptian Electric Cooperative Association sought to intervene as the alternate source of power and also as a landowner across whose properties Illinois Power would have to extend wires. The right to intervene was denied by the Commerce Commission. In the eminent domain action, Egyptian, as a property owner, filed a motion to dismiss and traverse which was heard.

In each of the above cases, the reviewing courts held that the right to consider use and necessity of taking was for the determination of the trial court without regard to the findings of the Commerce Commission.

■■ Out of these seemingly conflicting concepts comes one light of revelation. The Commerce Commission is an extension of the legislative branch. It considers the *plans* of the utility, endorses them with a certificate of convenience and necessity, and authorizes the utility to proceed with an enabling order. The respective positions of the legislative commissions and the courts are well set out in the lengthy opinion in *Zurn v. City of Chicago* (1945), 389 Ill. 114, 50 N.E.2d 18. There the court had before it an early post-war urban renewal ordinance of the city of Chicago. The ordinance provided for publication of notice to persons whose properties would be condemned or whose tenants would be displaced. In citing *Chicago, Burlington & Quincy R.R. Co. v. Cavanagh* (1917), 278 Ill. 609, 116 N.E. 128, the court held on this point that the order of the planning corporation (comparable to the Commerce Commission) did not amount to an appropriation of the owners' property and the making of the order gave the planning corporation no rights in owners' property. The property owners' rights are in jeopardy for the first time in court and are protected there by the motion to dismiss and traverse. As stated by the supreme court in *Egyptian Electric Cooperative Association v. Illinois Commerce Com.* (1965), 33 Ill. 2d 339, 342, 211 N.E.2d 238, 240: "The issue was not one of private but of public convenience and necessity, and the hearing before the Commission *was not a partisan hearing but an administrative investigation to ascertain and make findings of fact.*" (Emphasis added.)

■■ In essence then, the property owners there, as here, were not "parties to the proceedings" in the sense of parties to a litigation. The hearing was on the reasonableness of the utility's *plans* and could not confer property rights. Appeal of the order of the Commerce

Commission to the courts as provided by statute would only have been a review of the proposed plan for development of the project and the extent of the property to be sought. The appearance of the owners before the Commerce Commission to give input into the plans, or object thereto, could not bar them from later exercising their rights as owners of property being taken for a public use. There is nothing in the Public Utilities Act preempting the rights of the property owners in the condemnation proceedings. The two acts must be read in harmony if possible.

■■ It is the opinion of this court that the trial court erred in dismissing the motion to dismiss and traverse.

The cause is remanded for further proceedings in accordance with this opinion.

Reversed and remanded with instructions.

GREEN, P. J., and REARDON, J., concur.