712 P.2d 576

**CAMBRIDGE TELEPHONE CO., INC., Appellant,**

v.

**PINE TELEPHONE SYSTEM, INC., and Idaho Public Utilities Commission, Respondents.**

**In the Matter of the Application of PINE TELEPHONE SYSTEM, INC., to establish a service area in Idaho.**

**No. 15558.**

Supreme Court of Idaho.

Dec. 17, 1985.

Lary C. Walker, Weiser, for appellant Cambridge Telephone Co.

Jim Jones, Atty. Gen., Marsha H. Smith, Deputy Atty. Gen., Boise, for respondent Idaho Public Utilities Commission.

John L. King, Boise, for respondent Pine Telephone System, Inc.

BAKES, Justice.

Cambridge Telephone Company has appealed the order of the IPUC which granted an application of Pine Telephone System, Inc., to establish a telephone service

area on a portion of the Idaho side of the Snake River Canyon along the Oregon/Idaho border. We affirm the order of the commission.

This case involves the right to provide telephone service to the Idaho side of the Snake River Canyon bounded on the south by the Oxbow Dam and on the north by the Hell's Canyon Dam. The territory in question is approximately one-half mile wide and twenty-two miles in length, bordering a paved road which runs the distance of the disputed area. The road also extends south to the Oregon community of Oxbow.

Also running the length of the disputed area is a telephone cable owned by Mountain Bell. During the construction of the Hell's Canyon Dam the cable was first installed, but only a southern portion of the cable is presently used to provide telephone service to a former Idaho Power Company caretaker's residence which is located in a small section of the canyon territory previously certified to Mountain Bell. The southern end of the cable connects into Pine's telephone system at the Idaho/Oregon border near Oxbow, Oregon. Through an agreement with Mountain Bell, Pine presently provides the telephone service to the former Idaho Power residence within the disputed territory. There are three other residences along the canyon which presently need telephone service. The residents along the canyon rely on the Oregon communities of Oxbow and Halfway for social and community services.

With the exception of the small section certified to Mountain Bell, the southern portion of the disputed canyon area, along with the adjacent Idaho territory, was previously certified in 1979 to Cambridge. Three of the residences needing service are within the area previously certified to Cambridge, and the fourth residence in the small section certified to Mountain Bell is surrounded by territory previously certified to Cambridge. Prior to this dispute arising, Cambridge had extended its telephone services to within ten miles east of the disputed Oxbow area. Cambridge had also acquired materials and equipment and began laying telephone cable toward the Oxbow area in order to connect with the Mountain Bell cable and provide service to residents in the canyon. In the process, Cambridge had extended service to two or three residents along the way (not located in the disputed area) when the commission ordered a halt to the extension prior to completing the final 8–10 miles, which required a descent of approximately 4000 feet into the canyon to service the Oxbow area. Cambridge also planned on servicing the needs of future businesses and hoped to eventually provide telephone services further down the river canyon to the north to Hell's Canyon Dam, which was not in Cambridge's certified area. The northern portion of the disputed territory was previously uncertified.

Mountain Bell intervened at the IPUC hearing but is not a party to this appeal. Mountain Bell was willing to give up its small section of the disputed area and sell its telephone cable to either Pine or Cambridge. Mountain Bell's only interest was that the service to the residence within its small section be continued. Mountain Bell has no plans to alter or give up its right to provide telephone service to Idaho Power Company at the Hell's Canyon Dam, which service is presently supplied with the use of a microwave system.

Both Pine and Cambridge telephone companies were apparently unaware of each other's concurrent plans to provide telephone services along the Snake River Canyon. When Pine discovered that Cambridge was extending telephone cable toward Oxbow, Pine filed the application to establish a telephone service area along the Snake River Canyon. Cambridge filed a motion to dismiss the application, arguing that it was entitled under its existing certificate of convenience and necessity to service the entire disputed area. The four residents along the canyon all requested the commission to grant the application to Pine. Their preference was based on the fact that, if the area was granted to Cambridge, the residents may have to pay long distance charges to make telephone calls to

the Oregon communities of Oxbow and Halfway. The commission determined that either company would incur the costs of acquiring and repairing the Mountain Bell cable running along the canyon and the cost of hookups to the residences. Pine would have no other expenses above and beyond these costs. However, Cambridge would have to expend an additional $47,325 in order to complete the laying of its telephone cable another ten miles descending approximately 4,000 feet in elevation to the bottom of the canyon near Oxbow. Based upon the difference in cost and the residents' community of interest in Oregon, the commission granted Pine's application to establish the service area and denied Cambridge's motion to dismiss. The order also allowed Cambridge to amortize its investment and allowed Cambridge an opportunity to submit further evidence on the amount of its investment and costs to terminate the project. Cambridge has appealed.

■ Our review on appeal is limited to "whether the commission has regularly pursued its authority, including a determination of whether the order appealed from violates any right of the appellant under the Constitution of the United States or of the State of Idaho," I.C. § 61–629, and also whether the commission's findings are supported by substantial competent evidence. *Boise Water Corp. v. Idaho Pub. Utilities Comm'n,* 97 Idaho 832, 555 P.2d 163 (1976); *Mountain View Rural Tel. Co. v. Interstate Tel. Co.,* 55 Idaho 514, 46 P.2d 723 (1935). Cambridge argued before the commission and now argues on appeal that the commission's order barring Cambridge from serving a portion of its certified[1] area amounts to an unconstitutional taking of vested property rights. We hold that the findings contained in the order of the commission are adequate to justify the modification of Cambridge's certificate of convenience and necessity and revoke its privi-

lege to provide telephone service to the disputed area.

There is no question that the certificate of convenience and necessity issued to Cambridge is a property right protected by the due process provisions of the United States and Idaho Constitutions. U.S.Const. Amend. V, Amend. XIV, § 1; Idaho Const. Art. 1, §§ 13–14. *E.g., Frost v. Corporation Commission of State of Oklahoma,* 278 U.S. 515, 49 S.Ct. 235, 73 L.Ed. 483 (1929); *City of Owensboro v. Cumberland Telephone & Telegraph Co.,* 230 U.S. 58, 33 S.Ct. 988, 57 L.Ed. 1389 (1913); *Western Colorado Power Co. v. Public Utilities Comm'n,* 168 Colo. 61, 428 P.2d 922 (1967); *Mississippi Power & Light Co. v. City of Clarksdale,* 288 So.2d 9 (Miss.1973). The procedural aspect of due process, *i.e.,* adequate notice and timely hearing, have not been raised as issues on appeal, and we presume that Cambridge was afforded proper procedural due process. Due process also protects Cambridge's property interest in the certificate from being infringed upon. Cambridge argues that its property interest was taken without due process by misapplication of the law, insufficient evidence to justify the commission action, and that it must be justly compensated for the partial revocation of its certificate.

■ The commission basically made a public convenience and necessity analysis applying the factors enumerated in *McFayden v. Public Utilities Consolidated Corp.,* 50 Idaho 651, 299 P. 671 (1931), and *Application of Kootenai Natural Gas Co.,* 78 Idaho 621, 308 P.2d 593 (1957). Those cases involved competing applications to provide natural gas service to areas previously uncertified for that service. The factors enumerated in that case aid in determining which applicant could best serve the public convenience and necessity. The public convenience and necessity analysis was also properly applied to the limited

---

1. The commission did not issue a modified certificate of convenience and necessity to Cambridge with the disputed area removed from the description; however, at oral argument counsel for the commission stated that it was their intention to remove the area from Cambridge's certificate. Therefore, we view the order accordingly.

facts of this case, even though the territorial description in Cambridge's certificate previously included part of the territory applied for by Pine.

■ A certificate of public convenience and necessity is subject to and contingent upon statutory conditions, regulations and restrictions. Cambridge had a *prima facie* right to extend its service within its certified area. I.C. § 61–526. However, even a proposed extension within a utility's own certified area is subject to the limitation set out in I.C. § 61–526:

> "[I]f any public utility in constructing or extending its lines, plant or system, shall interfere or be about to interfere with the operation of the line, plant or system of any other public utility already constructed, *or if public convenience and necessity does not require* or will require such construction or extension, the commission on complaint of the public utility claiming to be injuriously affected, or on the commission's own motion, may, after hearing, *make such order and prescribe such terms and conditions for the locating or type of the line, plant or system affected as to it may seem just and reasonable:* provided, that power companies may, without such certificate, increase the capacity of their existing generating plants." I.C. § 61–526 (emphasis added).

Therefore, it was within the commission's jurisdiction, as a condition of the certificate of convenience and necessity, to review the extension of service into an *unserved* area within an *already certified area.* The commission may² "rescind, alter or amend," I.C. § 61–624, the certificate of convenience and necessity previously issued for an unserved area upon a showing that the "public convenience and necessity" does not require the extension, and the commission may "make such order and prescribe such terms and conditions for the locating or type of the line, plant or system affected as to it may seem just and reason-

able ....." I.C. § 61–526. The applicable statutory law became a part of Cambridge's certificate.

■ Some jurisdictions have held that an unserved area previously certified to a utility may not be revoked when the certified utility is ready, willing and able to extend adequate service at reasonable rates. *See Western Colorado Power Co. v. Public Utilities Comm'n,* 163 Colo. 61, 428 P.2d 922 (1967); *Capital Electric Power Ass'n v. Mississippi Power & Light Co.,* 240 Miss. 139, 125 So.2d 739 (1961). The rule in Idaho is the same except where the record clearly shows that "public convenience and necessity do not require" the extension of service into a certified but unserved area. The Utah Supreme Court recently addressed this issue, and we are persuaded by the analysis of that court:

> "Despite the prior granting of a franchise to one company, therefore, it may not be assumed that the franchise is permanent and exclusive for the indefinite future when circumstances require reassessment.
>
> . . . .
>
> "As the Commission stated in its conclusions of law:
>
> > '[T]he concept of "public convenience and necessity" should be considered in light of current and changing circumstances. If the end goal of providing adequate services at reasonable rates is not best subserved by a utility granted a prior certificated area, then "public convenience and necessity" dictates modification of the prior grant of authority. The development of our natural resources, which frequently are located in remote and sparsely populated areas of our State, should not be hindered by a blind adherence to previously certificated boundary lines where a utility in an adjoining service area already has facilities in place to provide continuous and adequate service at reasonable rates.'

---

2. This holding is limited to the facts of this case in which a utility was decertified to a presently unserved area on a public convenience and necessity standard. If the utility were presently serving the area or had substantially completed the extension, this rule would not apply.

. . . .

"To allow the duly certificated franchise holder to provide the needed electrical service would result in the very duplication of facilities and economic waste that utility regulation is designed to avoid. Allowing service to be provided by another utility not certificated within the area, but in very close proximity thereto, at a substantial cost savings is properly within the power of the Commission when there is no showing of harm to the losing utility, other than the loss of a small amount of revenue, and the public convenience and necessity supports the granting of the authority." *Empire Elec. Ass'n v. Public Service Comm'n*, 604 P.2d 930, 933–34 (Utah 1979).

▪ In the present case the commission concluded that "the public interest would clearly be disserved by denying Pine's application," and further that "this commission fails to see the wisdom of allowing Cambridge to spend an additional $47,000 to serve an area that can be served with only minimal expenditures by Pine." The commission found that the residents of the disputed area have strong social and economic ties to the Oregon communities. The commission found that their convenience and economy would be better served by Pine's toll free service to those communities as opposed to Cambridge's service which includes the possibility of long distance toll charges to those communities. The difference in cost to Pine as compared to Cambridge for providing the service to such a limited number of customers would adversely impact upon the existing customers of Cambridge by the addition of $47,000 into the rate base of that company.

Therefore, we conclude that the commission's order did not unconstitutionally deprive Cambridge of its certificate. The certificate was modifiable by a non-arbitrary application of a public convenience and ne-

cessity standard, a condition of the certificate, based upon substantial competent evidence.

▪ Cambridge next argues that it is entitled to just compensation for the commission's taking of its certificate. When an intangible property right such as a certificate, franchise, permit or contract is modified or revoked according to its terms, no taking of the property has occurred. The modification is not a "taking" of the property right, but a mere modification based upon statutory conditions contained in the certificate when it was first obtained. *Empire Elec. Ass'n v. Public Service Com'n*, 604 P.2d 930 (Utah 1979). The property right within Cambridge's certificate of convenience and necessity was accepted subject to these statutory conditions, which in this case included the commission's authority to modify the certificate by revoking the right to a portion of unserved area when the showing was made that the public convenience and necessity did not require Cambridge's extension of service to the area. The property right initially acquired by Cambridge in its certificate was subject to these statutory conditions.[3]

The order of the commission is affirmed. Costs to respondent; no attorney fees.

DONALDSON, C.J., and SHEPARD and HUNTLEY, JJ., concur.

BISTLINE, Justice, concurring in the judgment and in the opinion of the Court.

The Commission's decision is additionally fortified by giving appropriate attention and deference to legislative policy as evidenced by the enactment of I.C. § 61–332, *et seq.*, the statement of purpose being:

**Purpose of electric supplier stabilization act.—** . . .

B. This act is designed to promote harmony among and between electric

---

**3.** Cambridge's capital expenditures and expenses incurred in an effort to serve the disputed area prior to the commission's ruling in this matter must be allowed, and we specifically affirm the commission's order on reconsideration to allow Cambridge an additional opportunity to further prove its termination costs after making proper mitigation and allocation of the expenditures.

suppliers furnishing electricity within the state of Idaho, prohibit the "pirating" of customers of another supplier, discourage duplication of electric facilities, and stabilize the territories and customers served with electricity by such suppliers.

One would suppose that that which is good and beneficial for the people with regard to electric service is also so with regard to telephone service.