QUANTUM PIPELINE COMPANY *et al.*, Petitioners, ·v. ILLINOIS · COMMERCE COMMISSION, Respondent.

Third District   No. 3—98—0131

Opinion filed March 12, 1999.—Rehearing denied May 17, 1999.

312

SLATER and LYTTON, JJ., specially concurring.

J. Tyson Covey, Stephen J. Mattson (argued), Michele Odorizzi, and Barbara E. Cohen, all of Mayer, Brown & Platt, of Chicago, for petitioners.

James E. Weging (argued) and M. Kathleen Nolan (argued), both of Chicago, for respondent Illinois Commerce Commission.

Matthew Bertani (argued), of Rigazio & Bertani, of Morris, for other respondents.

JUSTICE KOEHLER delivered the opinion of the court:

The petitioners, Quantum Pipeline Company and Seagull Products

Pipeline Corporation, appeal the Illinois Commerce Commission's (Commission's) order rescinding the petitioners' certificate authorizing construction of a common carrier pipeline and denying the petitioners' request for eminent domain authority. We must decide whether the Commission denied the petitioners procedural due process when it revoked their certificate without giving them notice of a violation of their certificate, and in so doing, we must answer the following questions: (1) Does a liberty or property interest exist that requires due process be afforded? and (2) What process is due? *Because* we conclude that the procedure used by the Commission violated the petitioners' procedural due process rights, we reverse and remand with directions.

## I. FACTS

On April 21, 1995, the petitioners filed an application with the Commission seeking authorization to build a pipeline from Clinton, Iowa, to Morris, Illinois. The petitioners provided notice of their application for a certificate by publication in the official state newspaper. Although not required to do so, the petitioners distributed informational packets to landowners along the pipeline route and cooperated with the Illinois Department of Agriculture and Illinois Farm Bureau to notify and inform landowners of the proposed project. One landowner sought to intervene, but the Commission denied the petition as untimely. Subsequently, the Commission waived a hearing and granted the petitioners' certificate of public convenience and necessity after finding that a public need existed. 625 ILCS 5/18c—8201(1) (West 1992).

The petitioners then negotiated with private landowners for the easements required to build the pipeline. Due to an inability to obtain easements from all of the landowners, the petitioners sought eminent domain power under section 8—509 from the Commission.[1] 220 ILCS 5/8—509 (West 1992). Thirty-four landowners sought leave to intervene in the eminent domain proceeding.[2]

After the time to petition the Commission for a rehearing on its grant of petitioners' certificate expired, the Commission's staff filed a report to the Commission requesting that the Commission reopen the

---

[1]The petitioners were required to proceed under the Public Utilities Act because subchapter 8 of the Illinois Commercial Transportation Law, including section 18c—8401 which granted eminent domain powers, was repealed effective January 1, 1996. Both sections allowed common carriers by pipeline to exercise eminent domain powers after the approval of the Commission.

[2]The intervenors are the owners of real estate in Grundy and La Salle Counties across which the petitioners wish to construct the pipeline.

certificate proceeding pursuant to section 200.900 (83 Ill. Adm. Code § 200.900 (1992-93)). Section 200.900 allows the Commission to "reopen any proceeding when it has reason to believe that conditions of fact or law have so changed as to require, or that the public interest requires, such reopening."

The Commission's staff stated that "[the] public interest requires such reopening" due to the number of petitions to intervene in the petitioners' request for eminent domain authority. The Commission then entered an order initiating a proceeding to reopen the evidentiary record to determine "whether it will rescind, alter, amend or allow to stand as originally entered" its order granting the petitioners' certificate. This new proceeding was consolidated with the eminent domain proceeding.

In the consolidated proceedings, the petitioners presented the same evidence in support of their certificate that they submitted nine months earlier in the original proceeding, in addition to evidence supporting their request for eminent domain authority. The Commission's staff and various intervening landowners also submitted testimony to the Commission. A sharply divided Commission[3] entered an order rescinding the petitioners' certificate that was previously issued after concluding that the proposed pipeline was likely to only serve the petitioners' private needs and, further, that a public need for the pipeline did not exist. Because the Commission rescinded the certificate, it did not consider the propriety of the petitioners' request for eminent domain authority. Subsequently, the Commission also denied the petitioners' petition for rehearing. This appeal followed.

## II. ANALYSIS

■■ In determining whether the petitioners' constitutional rights have been violated, the standard of review is *de novo*. *In re Barbara H.*, 288 Ill. App. 3d 360, 365, 680 N.E.2d 471, 475 (1997). Further, our scope of review of final Commission orders is defined within the Public Utilities Act as follows:

"The [appellate] court shall reverse a Commission rule, regulation, order or decision, in whole or in part, if it finds that:

\* \* \*

C. The rule, regulation, order or decision is in violation of the State or federal constitution or laws; or

D. The proceedings or manner by which the Commission considered and decided its rule, regulation, order or decision were

---

[3]See January 9, 1998, dissenting opinion of Commissioner Ruth K. Kretschmer to the order entered by the Commission of December 17, 1997, Docket Nos. 96—0001, 96—0318.

in violation of the State or federal constitution or laws, to the prejudice of the appellant." 220 ILCS 5/10—201(e)(iv) (West 1992).[4] Based on this statute, we may reverse the Commission's decision to rescind the petitioners' certificate if we conclude that the Commission deprived the petitioners of their constitutional right to procedural due process.

■ As a threshold matter, does a liberty or property interest exist that requires procedural due process be afforded to the petitioners? An entity may have a property right if such an interest is given to him under state law. *East St. Louis Federation of Teachers, Local 1220 v. East St. Louis School District No. 189 Financial Oversight Panel*, 178 Ill. 2d 399, 416, 687 N.E.2d 1050, 1060 (1997). An interest is a property right subject to due process protection if that interest is secured by rules or mutually explicit understandings that support the claim of entitlement. *Federation of Teachers*, 178 Ill. 2d at 416, 687 N.E.2d at 1060. Therefore, the question becomes whether state law creates a property right in a certificate.

In order to answer this question, we look to *Frost v. Corporation Comm'n*, 278 U.S. 515, 73 L. Ed. 483, 49 S. Ct. 235 (1929). In *Frost*, the United States Supreme Court reasoned that the right to operate a cotton gin is not merely a license but, rather, a property right within the protection of the fourteenth amendment. In doing so, the court stated:

"Specifically, the foregoing authorities establish that the *right to* supply gas or water to a municipality and its inhabitants, the right to carry on the business of a telephone system, to operate a railroad, a street railway, city water works or gas works, to build a bridge, operate a ferry, and to collect tolls therefor, are franchises. And these are but illustrations of a *more comprehensive list*, from which it is difficult, upon any conceivable ground, to exclude a cotton gin, declared by statute to be a public utility engaged in a public business, the operation of which is precluded without a permit from a state governmental agency, and which is subject to the same authority as that exercised over transportation and transmission companies in respect of rates, charges and regulations. Under these

---

[4]Provisions relating to the review of Commission orders contained in this statute have been held unconstitutional to the extent that the procedures conflict with Supreme Court Rule 335. *Consumers Gas Co. v. Illinois Commerce Comm'n*, 144 Ill. App. 3d 229, 493 N.E.2d 1148 (1986), *aff'd*, *County of Cook, Cermak Health Services v. Illinois State Local Labor Relations Board*, 144 Ill. 2d 326, 338, 579 N.E.2d 866, 872 (1991). None of the provisions declared unconstitutional in *Consumers Gas* and *County of Cook* are implicated in this appeal.

conditions, to engage in the business is not a matter of common right, but a privilege, the exercise of which, except in virtue of a public grant, would be in derogation of the state's power. Such a privilege, by every legitimate test, is a franchise." (Emphasis added.) *Frost*, 278 U.S. at 520-21, 73 L. Ed. at 488, 49 S. Ct. at 237.

■ A common carrier pipeline has been declared by statute to be a public utility engaged in a public business. According to section 18c—8201(1)(b) (625 ILCS 5/18c—8201(1)(b) (West 1992)), the Commission must find that a public need for the service exists in order to issue a certificate authorizing the operations of a common carrier by pipeline. In this case, the Commission granted the petitioners' requested certificates of public convenience and necessity, finding:

"[T]he public convenience and necessity require issuance of certificates to [the petitioners] to construct, operate and maintain the proposed common carrier ethylene pipeline; a public need exists for the ethylene pipeline and associated facilities that [the petitioners] propose to construct, operate and maintain in common carriage; [and] issuance of certificates to [the petitioners] will enable ethylene transported to or from Illinois to be delivered and shipped safely and efficiently to or from additional customers in the State of Illinois ***."

Further, effective January 1, 1996, the Illinois General Assembly transferred jurisdiction over common carrier pipelines to the Illinois Public Utilities Act (220 ILCS 5/8—509 (West Supp. 1997)). This transfer reaffirms that common carrier pipelines are recognized by the state as public utilities engaged in a public business. In addition, section 18c—8201 underscores that a common carrier pipeline is not a business that is a matter of common right; rather, the statute mandates that, without a public grant of a certificate of public convenience and necessity, a common carrier pipeline may not commence operations. 625 ILCS 5/18c—8201(1) (West 1992).

■ Although the Commission could reopen a certificate proceeding under section 200.900 of the Illinois Administrative Code,[5] the Commission went further when it conceded that a certificate had already

---

[5]Section 200.900 states in pertinent part:

"After issuance of an order by the Commission, the Commission may, on its own motion, reopen any proceeding when it has reason to believe that conditions of fact or law have so changed as to require, or that the public interest requires, such reopening." 83 Ill. Adm. Code § 200.900 (1992).

been granted which it could decide to rescind.[6] In conclusion, we hold that the petitioners, having complied with the provisions of the statute, acquired a property right to build a pipeline by a valid grant of a certificate of convenience and necessity issued by the state; therefore, it is required that due process be afforded. *Frost*, 278 U.S. at 520, 73 L. Ed. at 488, 49 S. Ct. at 237. See also *Cambridge Telephone Co. v. Pine Telephone System, Inc.*, 109 Idaho 875, 878, 712 P.2d 576, 579 (1985) ("There is no question that the certificate of convenience and necessity issued to Cambridge is a property right protected by the due process provisions of the United States and Idaho Constitutions").

■ We must next decide what process is due. See *Matthews v. Eldridge*, 424 U.S. 319, 47 L. Ed. 2d 18, 96 S. Ct. 898 (1976). In so determining, we must analyze two factors: (1) the risk of an erroneous deprivation of the property interest caused by the procedures used and the probable value, if any, of additional or substitute procedural safeguards; and (2) the fiscal and administrative burdens placed on the Commission due to any necessary additional or substitute procedural requirements. *Matthews*, 424 U.S. at 321, 47 L. Ed. 2d at 33, 96 S. Ct. at 896.

First, we must analyze the procedure currently in the statute. *Federation of Teachers*, 178 Ill. 2d at 419, 687 N.E.2d at 1061, citing *Matthews*, 424 U.S. at 335, 47 L. Ed. 2d at 33, 96 S. Ct. at 903 ("The first step in determining what process is due is to consider the risk of erroneous deprivation of one's property interest in [the certificate] through the procedures already existing in the statute"). Since section 200.900 does not provide what process is due when a proceeding is reopened, we must look to the Commission's statement for further guidance on other statutes that may provide the due process procedure. Because the Commission stated, in its order to reopen the proceeding, that it would determine whether to "rescind, alter, amend or allow to stand as originally entered," we must examine and compare the statutes governing the Commission's exercise of these powers when determining what due process procedures already exist by statute.

■ State law requires that any public utility must obtain a certificate of public convenience and necessity from the Commission prior to commencing operations. 220 ILCS 5/8—406 (West 1992). Subparagraph (f) provides that such certificates may be "altered or modified" by the

---

[6]The Commission stated, in its order to reopen the proceeding, that it would determine whether to "rescind, alter, amend or allow to stand as originally entered" the previous order granting the certificate. Order Initiating Proceeding, No. 96—0318, Ill. Com. Comm'n 3 (June 26, 1996).

Commission, upon its own motion or upon application by the person or corporation affected. The statute is silent as to the time frame in which the power may be exercised, and it does not contain any requirement of notice or opportunity for a hearing or filing of formal pleadings to raise issues regarding the sufficiency of the certificate or the order granting it. This lack of procedural requirements is based upon the limited extent or scope of the "alteration or modification" that may be permitted.

■ In comparison, the power granted by section 10—113 (220 ILCS 5/10—113 (West 1992)) is more comprehensive than that conferred by section 8—406 (220 ILCS 5/8—406 (West 1992)). In section 10—113, the Commission is granted the power of rescission, alteration or amendment to any rule, regulation, order or decision of the Commission, while in section 8—406 the Commission's power is limited to alterations or modifications to certificates of public convenience and necessity. Since section 10—113 extends the Commission's powers by granting it the power to rescind, by definition, its rescission power is greater than its power to alter or modify as granted by section 8—406.[7]

The Commission's power to alter or modify certificates under section 8—406 is restricted to alterations and modifications of a minor nature that do not affect the substantial rights of the persons or corporation holding the certificate or the rights of any other person or utility. *Black Hawk Motor Transit Co. v. Illinois Commerce Comm'n*, 398 Ill. 542, 554, 76 N.E.2d 478, 486 (1947). This minor effect justifies the lack of procedural due process requirements in section 8—406.

■ Conversely, rescission of a certificate may affect the substantial rights of the petitioners. A public utility acquires an "interest" in a certificate granted to it by the Commission and is authorized to act according to its terms. *Black Hawk*, 398 Ill. at 554, 76 N.E.2d at 486. Although a public utility's right to a certificate is not absolute because it is subject to statutory conditions, we hold that the Commission must afford procedural due process when it proposes action that may result in the rescission of a certificate. *Black Hawk*, 398 Ill. at 554, 76 N.E.2d at 486; *Federation of Teachers*, 178 Ill. 2d at 418-19, 687 N.E.2d at 1061.

Section 10—113 of the Public Utilities Act explains in part the due

---

[7]The power to "rescind" a certificate means to abrogate, annul, to vacate or set aside; the power to "alter" means to make a thing different without making it into something else; and, the word "modify" means to change somewhat the form or qualities of. *Black Hawk Motor Transit Co. v. Illinois Commerce Comm'n*, 398 Ill. 542, 553, 76 N.E.2d 478, 485 (1947).

process procedure to be used when the Commission decides whether to rescind any of its rules, regulations, orders or decisions:

"[T]he Commission may at any time, upon *notice* to the public utility affected, and *after opportunity to be heard as provided in the case of complaints*, rescind, alter or amend any rule, regulation, order or decision made by it." (Emphasis added.) 220 ILCS 5/10—113 (West 1992).

Section 10—113 signals to this court that we must refer to section 10—108, the statute on complaints, for the statutory due process procedure required when rescission is possible. Section 10—108 of the Act provides:

"Complaint may be made by the Commission, of its own motion *** by petition or complaint in writing, *setting forth any act or things done or omitted to be done in violation, or claimed to be in violation, of any provision of this Act, or of any order or rule of the Commission.* ***

Upon the filing of a complaint the Commission shall cause a copy thereof to be served upon the person or corporation complained of which shall be accompanied by a notice requiring that the complaint be satisfied and answered within a reasonable time to be specified by the Commission or within the discretion of the Commission, by a notice fixing a time when and place where a hearing will be had upon such complaint. Notice of the time and place shall also be given to the complainant and to such other persons as the Commission shall deem necessary. ***

\* \* \*

*** [T]he Commission shall make and render findings concerning the subject matter and facts complained of and enter its order based thereon ***." (Emphasis added.) 220 ILCS 5/10—108 (West 1992).

■ After conducting our examination to determine what process is due, we conclude that section 10—113 in conjunction with section 10—108 makes clear that the Commission's power to rescind, alter, or amend its own order can only be exercised after providing notice by means of a written complaint setting forth an alleged violation of the Act, order or rule of the Commission that is filed with the Commission. *Antunes v. Sookhakitch*, 146 Ill. 2d 477, 484, 588 N.E.2d 1111, 1114 (1992) (holding that a court must examine a statute as a whole, including looking at each section in connection with the other sections, to determine the legislative intent). Further, an opportunity to be heard must be provided by holding a hearing at a fixed time and place, and the Commission must enter an order based on its findings.

Next we must determine whether there is a risk of an erroneous deprivation of the petitioners' property interest when the statutorily

prescribed procedure is used and what is the probable value, if any, of additional or substitute procedural safeguards.

■ Notice is a fundamental requirement of due process because a party must be aware of the state action in order to effectively contest it. *Federation of Teachers*, 178 Ill. 2d at 419-20, 687 N.E.2d at 1062. Equally as fundamental is the opportunity to be heard at a meaningful time and in a meaningful manner. *Federation of Teachers*, 178 Ill. 2d at 419, 687 N.E.2d at 1062. Here, in the case of a rescission of a certificate, order or decision, the relevant statutes require that a complaint be filed, notice be given, an opportunity to be heard be provided, and findings of fact be entered. The current statutory procedures minimize the risk of unfair or mistaken deprivation of a party's due process rights by enabling the defending party to contest the state's basis for deprivation of its rights. *Federation of Teachers*, 178 Ill. 2d at 420, 687 N.E.2d at 1062. After so determining, we conclude that the risk of an erroneous deprivation of a property interest is minimal and additional safeguards are unnecessary when the required procedure set by the current statute is followed.

■ Finally, we must focus on the second factor used in analyzing what process is due, the fiscal and administrative burden on the Commission due to any additional or substitute procedural requirements. Because we conclude that the current statutory requirements afford the requisite procedural due process, no additional or substitute procedures must be given. Rather, the Commission merely must follow the statutory procedure as provided.

■ Nevertheless, the petitioners in these proceedings were not provided the required notice. The Commission did not issue a written complaint charging any act or omission in violation of its prior order granting the petitioners' certificate or any change in the law or any factual change constituting a violation. The Commission in its order of June 26, 1996, did not make any finding relating to any such violation, nor did it find that there were any errors of law or fact in its order of September 13, 1995, that granted the petitioners' certificate.[8] See *Union Electric Co. v. Illinois Commerce Comm'n*, 39 Ill. 2d 386, 235 N.E.2d 604 (1968). Further, since the Commission had already entered an order granting the petitioners a certificate permitting them to build a pipeline, the subject of the complaint must be limited to the violations specified in the statute on complaints (220 ILCS 5/10—108

---

[8]The Commission found that the public interest required reopening because no interested parties, other than the applicants, appeared during the original proceedings. Order Initiating Proceeding, No. 96—0318, Ill. Com. Comm'n (June 26, 1996).

(West 1992)). *Black Hawk*, 398 Ill. at 561, 76 N.E.2d at 488. We therefore hold that when a proceeding may result in the rescission of a certificate, due process dictates that those having the property interest at stake must be given notice that sets forth "any act or things done or omitted to be done in violation, or claimed to be in violation, of any provision of [the Public Utilities Act], or of any order or rule of the Commission." See *Frost*, 278 U.S. at 520-21, 73 L. Ed. at 488, 49 S. Ct. at 237; *Federation of Teachers*, 178 Ill. 2d at 418-19, 687 N.E.2d at 1061. In so holding, we conclude that the Commission failed to provide the petitioners with adequate notice, and in so doing, it deprived the petitioners of their constitutional right to due process. Consequently, the Commission was without authority to rescind the petitioners' certificate. *Union Electric*, 39 Ill. 2d at 395-96, 235 N.E.2d at 610.

## III. CONCLUSION

■■■ In sum, we conclude that because the Commission stated that the reopened proceeding could result in a rescission of the petitioners' certificate, in which the petitioners possessed a property interest, the petitioners were entitled to procedural due process. Although the procedures as outlined by statute meet the constitutional requirements for procedural due process, the Commission failed to follow the statutory procedure, and thus the Commission acting without authority denied the petitioners procedural due process by rescinding their certificate without proper notice and an opportunity to be heard. Therefore, we must reverse and remand the cause with directions to set aside the order of the Illinois Commerce Commission of December 17, 1997.[9] 220 ILCS 5/10—201(e)(iv) (West 1992).

Reversed and remanded with directions.

JUSTICE SLATER, specially concurring:
I agree that the Commission improperly rescinded petitioners' certificate of public convenience and necessity. Section 10—113 of the Public Utilities Act allows rescission only after notice and on op-

---

[9]We need not decide the issues presented on appeal regarding the reopened certificate proceedings, and we decline to address the petitioners' request to direct the Commission to give eminent domain authority. This we cannot do, as that authority is held by the Commission, and the considerations that go into issuing eminent domain authority are different than the conditions for issuing a certificate. See 220 ILCS 5/8—509 (West 1992).

portunity to be heard "as provided in the case of complaints." 220 ILCS 5/10—113 (West 1992). As the supreme court explained:

" 'A public utility acquires an interest in a certificate granted to it and is authorized to act according to its terms. If the proposed action of the commission is to lead to a rescission of the certificate, it is obvious that the exercise of the power of rescission must meet with the rules of due process. The requirement of section 67 [now section 10—113] that there be opportunity to be heard as in case of complaint and the procedural requirements of the section on complaint (section 64 [now section 10—108]) accord with the rules of due process as understood and applied to public utilities.' " *Union Electric Co. v. Illinois Commerce Comm'n*, 39 Ill. 2d 386, 393-94, 235 N.E.2d 604, 609 (1968), quoting *Black Hawk Motor Transit Co. v. Illinois Commerce Comm'n*, 398 Ill. 542, 554, 76 N.E.2d 478, 485 (1947).

Section 10—108 requires that the complaint be "in writing, setting forth any act or things done or omitted to be done in violation, or claimed to be in violation, of any provision of this Act, or of any order or rule of the Commission." 220 ILCS 5/10—108 (West 1992). As noted in *Black Hawk*, though no particular form of complaint is required, " 'there must be a statement of the thing which is claimed to be wrong, sufficiently plain to put the carrier upon its defense.' " *Black Hawk*, 398 Ill. at 561, 76 N.E.2d at 488, quoting *Alton & Southern R.R. v. Commerce Comm'n ex rel. Perry Coal Co.*, 316 Ill. 625, 630, 147 N.E. 417, 419 (1925).

The problem in this case was that the Commission was not claiming that any provision of the Act had been violated. Instead, the Commission stated "that great interest in the construction of this pipeline has been demonstrated by the number of petitions to intervene which have been filed in the eminent domain proceeding, and [we] find[ ] that the public interest requires the reopening of [the certificate proceeding] because no interested parties, other than the [petitioners], appeared during the original proceeding to voice their opinions and concerns as to whether the public convenience and necessity would be served by the construction of this pipeline." Although section 200.90 of the Illinois Administrative Code empowers the Commission to reopen any proceeding where "the public interest requires" (83 Ill. Adm. Code § 200.90 (1992-93)), *Union Electric* and *Black Hawk* dictate that the procedural requirements of section 10—108 must be met where recission of a certificate may result from that reopening.

In my view, the denial of due process suffered by petitioners here was technical, not substantial. Petitioners were informed that the Commission was reviewing the propriety of issuing the certificate and

numerous hearings were held in which petitioners fully participated, putting on what has been repeatedly described as a "full certificate case." As the Commission noted in its order, "[p]etitioners at all times knew exactly what the nature of the inquiry was." Nevertheless, we are bound by *Union Electric* and *Black Hawk,* and I believe those decisions require the result reached here.

There is considerable irony, however, in overturning the Commission's decision on the basis that a lack of notice deprived petitioners of due process. At its core, this case is about lack of notice—to the intervening landowners. On April 25, 1995, petitioners published notice in the Edwardsville Intelligencer, in Madison County, Illinois, that they were seeking authorization from the Commission to build the pipeline. No part of the proposed line lies within Madison County. The distance between Edwardsville and Morris, Illinois, where many of the intervenors live, is over 200 miles. Such "notice," in my opinion, is completely inadequate to advise the intervenors that petitioners were proposing to build a pipeline across their land. However, even this minimal notice was more than was required. The Commission found that the Illinois Commercial Transportation Law imposes no notice requirement on pipeline common carriers applying for certification. It appears that the Commission was correct. Furthermore, lack of notice does not deprive intervenors of due process because, as the Commission noted, "the [s]upreme [c]ourt has held, on numerous occasions, that landowners on a path proposed for certification have no right to notice of the proceedings addressing certification, because the granting of a certificate deprives them of neither their property nor any interest therein."

To petitioners' credit, they took additional steps to inform intervenors of the certificate proceedings. On approximately May 9, 1995, petitioners mailed letters to the landowners advising them that they planned to build a pipeline across their property. However, while the attached informational booklet noted that an application for certification had been filed with the Commission, it did not advise intervenors of the docket number of the application, where a copy might be obtained, or of any rights they might have to participate. Moreover, on May 11, 1995—two days after the letters were mailed— petitioners filed a letter requesting the Commission to issue the certificate without a hearing because no party had moved to intervene. The letter indicated that the time for intervention had expired on May 10—one day after the letters were mailed to the landowners.

It is apparent that the landowners did not have sufficient notice to provide a realistic chance of participating in the certification process. It seems likely that this lack of any meaningful opportunity to be

heard motivated the Commission's decision to reopen the proceedings. In any event, I believe it would be patently unfair to force the intervening landowners to give up their land, through use of petitioners' eminent domain power, without having had the opportunity to challenge the need for the pipeline. Fortunately, intervenors are not precluded from doing so, despite petitioners' contention that issuance of the certificate stands as a conclusive finding of public convenience and necessity which may not be challenged in the eminent domain proceeding.

In *Illinois Power Co. v. Lynn*, 50 Ill. App. 3d 77, 365 N.E.2d 264 (1977), the Commission issued a certificate of convenience and necessity to the power company after holding hearings. Defendant landowners, who had participated in the hearings, did not seek a rehearing or appeal the Commission's decision. When the power company attempted to take the land by eminent domain, the landowners filed a motion to dismiss and traverse. The trial court denied the motion, finding that the question of public need for the land had been resolved by the Commission. On appeal, the reviewing court characterized the issue as whether the "Commission's finding that the needs and plans of the utility constitute a 'public use,' and that certain properties need to be acquired to develop those plans, preempt the courts from inquiring into these same subject matters?" *Illinois Power*, 50 Ill. App. 3d at 78, 365 N.E.2d at 265.

After examining the "seemingly conflicting" case law, the court concluded that the landowners were not foreclosed from raising the issue of whether the proposed project constituted a public use. The court explained that the certificate proceedings merely decided the reasonableness of the utility's plan and did not confer property rights. Those rights "are in jeopardy for the first time in court [at the eminent domain proceedings] and are protected there by the motion to dismiss and traverse." *Illinois Power*, 50 Ill. App. 3d at 81, 365 N.E.2d at 267.

The rationale underlying the *Illinois Power* decision was perhaps best expressed over 70 years ago in *Limits Industrial R.R. Co. v. American Spiral Pipe Works*, 321 Ill. 101, 105-06, 151 N.E. 567, 569 (1926):

> "The court cannot inquire into the necessity or propriety of the exercise of the right of eminent domain, which is the power to take private property without the consent of the owner upon making just compensation therefor. That is a legislative question, and when the legislature, by itself or by an agency to which authority for the purpose has been lawfully delegated, has decided the cases in which the power may be exercised, the courts may not interfere with the decision. *On the other hand, it is only for public use that the legislature can authorize private property to be taken, and any at-*

*tempt to grant the right to take private property for a use not public is unconstitutional and void.* [Citations.] *The question whether the use to which it is sought to apply private property by the exercise of the power of eminent domain is a public use is therefore a judicial question, and whenever the right to take private property by the exercise of that power is challenged because the use for which the property is sought to be taken is not a public use, the court must decide the question. The findings of the Commerce Commission, its certificate of convenience and necessity and its approval of the issue of the capital stock of the railroad company are therefore in no way conclusive, and the question whether the proposed use was public or not was open for the consideration of the court on the motion to dismiss the petition.*" (Emphasis added.)

Thus, even though our decision here nullifies the Commission's finding that the pipeline was a private venture that did not benefit the public, intervenors may litigate that issue in any subsequent eminent domain proceedings. This ensures that the due process rights of the landowners receive the same protection bestowed upon the petitioners.

JUSTICE LYTTON, specially concurring:

I concur with the opinion of the court, which provides an excellent analysis of this case.

However, I specially concur because I also believe that Judge Slater's special concurrence makes an important point that cannot be overstated. Long-standing Illinois precedent permits intervening landowners to present evidence challenging the need for the pipeline during the condemnation proceedings, regardless of whether they had participated in the prior certification process. See *Limits Industrial R.R. Co. v. American Spiral Pipe Works*, 321 Ill. 101, 151 N.E.2d 567 (1926); *Illinois Power Co. v. Lynn*, 50 Ill. App. 3d 77, 365 N.E.2d 264 (1977). This opportunity for landowners whose properties are threatened by eminent domain actions to play a meaningful role provides critical protection for their ownership rights.