# Illinois Official Reports

## Appellate Court

---

### *Enbridge Energy (Illinois), L.L.C. v. Kuerth*, 2018 IL App (4th) 150519-B

---

| | |
|---|---|
| Appellate Court Caption | ENBRIDGE ENERGY (ILLINOIS), L.L.C., n/k/a Illinois Extension Pipeline Company, Plaintiff-Appellee, v. DEBRA S. KUERTH, as Trustee of the Debra S. Kuerth Trust, Under the Declaration of Trust Dated January 29, 2007; THE DEBRA S. KUERTH TRUST, Under Declaration of Trust Dated January 29, 2007; NONRECORD CLAIMANTS; and UNKNOWN OWNERS, Defendants-Appellants.–ENBRIDGE ENERGY (ILLINOIS), L.L.C., n/k/a Illinois Extension Pipeline Company, Plaintiff-Appellee, v. KENNETH L. KUERTH; DIANNE KUERTH; NONRECORD CLAIMANTS; and UNKNOWN OWNERS, Defendants-Appellants. |
| District & No. | Fourth District<br>Docket Nos. 4-15-0519, 4-15-0520 cons. |
| Filed | February 27, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Livingston County, Nos. 14-ED-12, 14-ED-13; the Hon. Mark A. Fellheimer, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Thomas J. Pliura, of LeRoy, for appellants.<br><br>Gerald A. Ambrose, Steven J. Horowitz, Brian A. McAleenan, and Dale E. Thomas, of Sidley Austin LLP, of Chicago, John M. Spesia and Jacob E. Gancarczyk, of Spesia & Taylor, of Joliet, and Christopher J. Spanos, of Hinshaw & Culbertson LLP, of Peoria, for appellee. |

Panel                   JUSTICE STEIGMANN delivered the judgment of the court, with opinion.
Justices Holder White and DeArmond concurred in the judgment and opinion.

**OPINION**

¶ 1       This case, which is an appeal from a condemnation proceeding under the Eminent Domain Act (Act) (735 ILCS 30/5-5-5(c) (West 2014)), is before this court for the second time. The first time resulted in *Enbridge Energy (Illinois), L.L.C. v. Kuerth*, 2016 IL App (4th) 150519, 69 N.E.3d 287 (hereinafter *Kuerth I*). In *Kuerth I*, we resolved some of the issues that case presented but remanded the case to the trial court with specific directions regarding further proceedings. *Id.* ¶¶ 173-83. The trial court has conducted those further proceedings and has returned the case to this court so that we may now resolve all of the issues this appeal presents.

¶ 2                         I. Procedural History

¶ 3       In April 2014, the Illinois Commerce Commission (Commission) granted plaintiff, Enbridge Energy (Illinois), L.L.C., now known as the Illinois Extension Pipeline Company (IEPC), eminent-domain authority to acquire easements for the construction of an oil pipeline project known as the Southern Access Extension (SAX). Marathon Petroleum Company (Marathon) contributed to the cost of the pipeline and has the contractual right to approximately two-thirds of the pipeline's capacity.

¶ 4       In July 2014, IEPC filed for condemnation proceedings for an easement against defendants Debra S. Kuerth and the Debra S. Kuerth Trust (Livingston County case No. 14-ED-12; this court's case No. 4-15-0519) and Kenneth L. Kuerth and Dianne Kuerth (Livingston County case No. 14-ED-13; this court's case No. 4-15-0520) (collectively, landowners).

¶ 5       In July 2014, landowners filed a traverse motion seeking to block construction of the pipeline. In October 2014, landowners filed a motion for discovery and a memorandum in support of their traverse motions. The trial court denied landowners' request for discovery and denied their traverse motions. The court then granted a directed verdict in IEPC's favor, granting it permission to build the pipeline and determining the value of compensation to be paid to the landowners.

¶ 6       In *Kuerth I*, landowners appealed and argued that the trial court erred by (1) denying their motion for discovery, (2) denying their traverse motions, (3) barring landowners' testimony concerning just compensation, and (4) barring the testimony of two potential expert witnesses. We agreed in part, holding that the denial of the traverse motions effectively deprived landowners of the opportunity to present relevant evidence to (1) rebut the presumptions of public use and public necessity and (2) refute the Commission's determination that IEPC had engaged in good-faith negotiations when the Commission granted IEPC eminent-domain authority. *Id.* ¶ 151. We otherwise affirmed the trial court. We then remanded this case to the trial court with explicit instructions to conduct a traverse hearing. *Id.* ¶ 179.

¶ 7       On remand, landowners filed a discovery request seeking "[t]he identity of any and all, past or present, shippers who have shipped on the SAX pipeline, the amount of product each entity

has shipped or is shipping on the SAX pipeline and terms under which each individual entity has shipped or is shipping on the SAX pipeline." In February 2017, the court denied landowners' request for discovery.

¶ 8 In April 2017, the trial court conducted the traverse hearing in which the court was required to determine "whether landowners can present (1) clear and convincing evidence to rebut the presumptions of public use and public necessity and (2) sufficient evidence to refute the substantial deference afforded the Commission's good-faith determination." *Id.* ¶ 174. The court concluded that landowners did not present "clear and convincing evidence" to rebut the presumptions of public use and public necessity or sufficient evidence to rebut "the substantial deference afforded [to] the Commission's good-faith determination." Accordingly, the court denied the traverse motion. The court also denied IEPC's motion for sanctions against landowners' attorney under Illinois Supreme Court Rule 137 (eff. July 1, 2013).

¶ 9 This second appeal followed, and landowners now argue that (1) they presented sufficient evidence to rebut IEPC's presumptions by clear and convincing evidence and (2) the trial court erred by denying their request for discovery. IEPC argues that the trial court erred by denying their motion for sanctions. IEPC is also asking this court to impose sanctions pursuant to Illinois Supreme Court Rule 375(b) (eff. Feb. 1, 1994).

¶ 10 We conclude that (1) the trial court's holding that landowners failed to rebut the presumptions of public use and public necessity was not against the manifest weight of the evidence, (2) the trial court did not err by denying their request for discovery, and (3) the court did not abuse its discretion in declining to award sanctions against landowners' attorney. We likewise decline to impose sanctions pursuant to Rule 375(b).

¶ 11 II. Background
¶ 12 A. The Condemnation Proceedings and the First Trial
¶ 13 In April 2014, the Commission granted IEPC eminent-domain authority to acquire easements for the construction of the SAX pipeline project. Marathon contributed to the cost of the pipeline and has the contractual right to approximately two-thirds of the pipeline's capacity.

¶ 14 In July 2014, IEPC filed for condemnation proceedings for an easement against landowners. IEPC sought to acquire a route for the SAX pipeline and to determine the just compensation to be paid to landowners.

¶ 15 In July 2014, landowners filed a traverse motion, arguing that (1) IEPC was not vested with the authority to acquire defendant's property, (2) the property sought to be acquired was not necessary or convenient for the purpose for which it was sought, (3) the amount of property taken was excessive of IEPC's needs, (4) IEPC does not seek the property for a public use, (5) there had been no *bona fide* attempt to agree with the landowners as to the just compensation and damages to be paid, (6) the pipeline project did not constitute a public convenience or necessity, (7) the pipeline was not a common carrier because of the restrictions on access to the pipeline, (8) IEPC's authority to acquire the property by eminent domain is limited to a project that IEPC was no longer pursuing, and (9) IEPC did not have the legal authority to construct the pipeline because it had no certificate in good standing for the project it was pursuing.

¶ 16 In October 2014, landowners filed a motion for discovery, arguing that they were entitled to additional discovery. Later that month, the trial court denied landowners' request for

discovery and denied their traverse motions. The court also barred landowners from testifying about the value of their property and barred landowners' supposed expert witness from testifying about the value of the property. The court, after a trial regarding the value of landowners' properties, directed a judgment in IEPC's favor. The court then granted IEPC permission to build the pipeline and determined the compensation to be paid to the landowners.

¶ 17                          B. The First Appeal and Remand Instructions

¶ 18    Landowners appealed, arguing that the trial court erred by (1) denying their motion for discovery, (2) denying their traverse motions, (3) barring landowners' testimony concerning just compensation, and (4) barring the testimony of two potential expert witnesses. We agreed in part, holding that the denial of the traverse motions effectively deprived landowners of the opportunity to present relevant evidence to (1) rebut the presumptions of public use and public necessity and (2) refute the Commission's determination that IEPC had engaged in good-faith negotiations when the Commission granted IEPC eminent-domain authority. *Kuerth I*, 2016 IL App (4th) 150519, ¶ 151. We otherwise affirmed the trial court. *Id.* ¶ 114. We then remanded this case to the trial court with explicit instructions to conduct a traverse hearing, and we retained jurisdiction of this appeal. *Id.* ¶¶ 173-80. We provided the following instructions on remand:

> "[W]hen IEPC filed its complaints for condemnation against landowners' respective properties[,] IEPC enjoyed the rebuttable presumptions that its interests in landowners' respective tracts of land were (1) primarily for the benefit, use, or enjoyment of the public; and (2) necessary for a public purpose. In addition to those presumptions, the Commission determined that eminent-domain authority in IEPC's favor was warranted because good-faith negotiations between IEPC and landowners had failed. Thus, landowners were entitled to present relevant evidence to rebut these specific presumptions and to refute the good-faith finding [at the traverse hearing]." *Id.* ¶ 164.

¶ 19                              C. The New Traverse Hearing
¶ 20                                   1. *Discovery*
¶ 21    Following our instructions on remand, landowners filed a discovery request seeking "[t]he identity of any and all, past or present, shippers who have shipped on the SAX pipeline, the amount of product each entity has shipped or is shipping on the SAX pipeline and terms under which each individual entity has shipped or is shipping on the SAX pipeline." Landowners argued that this information was necessary to determine whether the project was "primarily for the benefit, use, or enjoyment of the public."

¶ 22    In February 2017, the trial court denied landowners' request for discovery. The court found the requested information to be irrelevant to the limited scope of a traverse hearing.

¶ 23    Landowners then filed a motion to reconsider and a motion for clarification regarding the trial court's order. In April 2017, the court denied those motions. The court concluded that "given the limited purpose of a traverse hearing, such broad discovery is a wasteful use of resources that would serve only to complicate, confuse, and delay the proceedings."

¶ 24                                    2. *The Traverse Hearing*

¶ 25        Immediately following the denial of landowners' motion to reconsider and motion for clarification, the trial court conducted the traverse hearing. At that hearing, the court was required to determine "whether landowners can present (1) clear and convincing evidence to rebut the presumptions of public use and public necessity and (2) sufficient evidence to refute the substantial deference afforded the Commission's good-faith determination." *Id.* ¶ 174.

¶ 26                                 a. Public Use and Necessity

¶ 27        Landowners argued that they rebutted the presumptions of public use and public necessity by clear and convincing evidence. Landowners noted that IEPC is a private company and that Marathon owns a majority of the pipeline's capacity. Based thereon, landowners contended that this proposed pipeline "is nothing more than a private project. And it is a private project funded and controlled by Marathon. And so if the public can't use that [pipeline], it wouldn't comply with the Eminent Domain Act[,] and it wouldn't qualify for eminent domain."

¶ 28        The trial court rejected this argument, stating that "Marathon's involvement in this [pipeline] is not relevant *** to the public use and public necessity presumptions." Thus, the court concluded "there is not clear and convincing evidence" to rebut the presumption of public use and public necessity.

¶ 29                                 b. Good-Faith Determination

¶ 30        In July 2017, the trial court resumed the traverse hearing to determine whether landowners presented sufficient evidence to refute the substantial deference afforded to the Commission's determination that IEPC negotiated in good faith with the landowners. Landowners argued they rebutted the presumption of good faith because IEPC (1) did not get an appraisal for the value of their property, (2) only gave the landowners 10 days to respond to the original offer, and (3) did not inform landowners of a market study they conducted.

¶ 31        The trial court held that "the evidence here is not sufficient to refute the substantial deference afforded [to] the Commission's good faith determination." The court based its decision on the lengthy history of information shared with the landowners, the offers made, the length of time involved, and the fact that IEPC increased its original offer to purchase the easement. In this appeal, landowners do not challenge this ruling.

¶ 32                                    D. Attorney Sanctions

¶ 33        The trial court then considered IEPC's motion for sanctions against landowners' attorney. IEPC argued that the landowners' attorney filed motions containing frivolous arguments that had already been rejected by the appellate court and the Commission. Landowners' attorney countered that his argument was in response to the remand instructions this court gave. The trial court agreed with landowners' attorney, concluding that any perceived errors "don't rise to the level of sanctions being imposed, especially when the Appellate Court [let] them submit what evidence they believe [is] in accordance with the remand instructions."

¶ 34        This appeal followed.

¶ 35                                    III. Analysis

¶ 36        On appeal, landowners argue that (1) they presented sufficient evidence to rebut IEPC's presumptions by clear and convincing evidence and (2) the trial court erred by denying their request for discovery. IEPC argues that the trial court erred in denying their motion for sanctions. IEPC has also asked this court to impose sanctions pursuant to Rule 375(b). We address these issues in turn.

¶ 37                    A. Rebutting the Presumptions at the Traverse Hearing

¶ 38        On appeal regarding this issue, landowners argue that (1) the trial court's finding was based upon a mistaken interpretation of section 5-5-5(c) of the Act; (2) Marathon's involvement in the pipeline is relevant to whether the pipeline is primarily for the benefit, use, or enjoyment of the public; and (3) they presented sufficient evidence to rebut the presumptions of public use and public necessity. 735 ILCS 30/5-5-5(c) (West 2014). We disagree.

¶ 39                               1. *The Applicable Statute*

¶ 40        At the traverse hearing, landowners asserted that the proposed pipeline was not *primarily* for the benefit, use, or enjoyment of the public within the meaning of section 5-5-5(c) of the Act because Marathon controls two-thirds of the shipping capacity of the proposed pipeline. *Id.* On appeal, landowners argue that "primarily" should be defined by a percentage of use, concluding that "[b]ecause Marathon [owns] more than fifty percent of the pipeline's capacity, the primary 'benefit, use, or enjoyment' of the pipeline is going solely to Marathon, and the public is thus not the primary beneficiary."

¶ 41        "Primarily" is not defined in section 5-5-5(c) of the Act. See *id.* The pertinent portions of section 5-5-5(c) read as follows:

> "[I]f the exercise of eminent domain authority is to acquire property for private ownership or control, or both, then the condemning authority must prove by clear and convincing evidence that the acquisition of the property for private ownership or control is (i) primarily for the benefit, use, or enjoyment of the public and (ii) necessary for a public purpose.
>
>                                       * * *
>
> Evidence that the Illinois Commerce Commission has granted a certificate or otherwise made a finding of public convenience and necessity for an acquisition of property *** for private ownership or control *** to be used for utility purposes creates a rebuttable presumption that such acquisition of that property *** is (i) primarily for the benefit, use, or enjoyment of the public and (ii) necessary for a public purpose." *Id.*

¶ 42                               2. *Statutory Construction*

¶ 43        The primary goal of statutory construction is to determine and execute the intent of the legislature. *Sinkus v. BTE Consulting*, 2017 IL App (1st) 152135, ¶ 14, 72 N.E.3d 1251. We construe the statute as a whole and afford the language of the statute its plain and ordinary meaning. *Id.* When a term is not defined in a statute, we assume that the legislature intended the term to have its ordinary and popularly understood meaning. *People v. Hill*, 409 Ill. App. 3d 451, 454, 949 N.E.2d 1180, 1183 (2011). Further, when a term is undefined in a statute, consulting a dictionary is appropriate to ascertain the plain and ordinary meaning of the term.

*Shared Imaging, LLC v. Hamer*, 2017 IL App (1st) 152817, ¶ 32, 84 N.E.3d 398. A question of statutory interpretation is reviewed *de novo*. *Id.* ¶ 14.

¶ 44                                                          3. *Analysis*

¶ 45        The fundamental flaw of landowners' argument is that they focus entirely upon who *uses* the pipeline rather than who *benefits* from it. The Act, however, is disjunctive in nature and allows a trier of fact to consider whether the primary benefit, use, *or* enjoyment of a proposed project inures to the public. 735 ILCS 30/5-5-5(c) (West 2014).

¶ 46        Within the meaning of section 5-5-5(c) of the Act, the public will often benefit from a pipeline. Oil, natural gas, and other energy sources are essential to modern American life and must be transported from production facilities to refineries and ultimately to consumers. Pipelines are necessary for this transportation and are often safer and more efficient than transportation by train or truck. Further, we note that this court had previously rejected landowners' argument that the Commission erred by determining a public need existed for this pipeline. See *Pliura Intervenors v. Illinois Commerce Comm'n*, 405 Ill. App. 3d 199, 208-09, 942 N.E.2d 576, 584-85 (2010).

¶ 47        As noted earlier, the legislature, in enacting section 5-5-5(c) of the Act, left the word "primarily" undefined, so we assume the legislature intended this term to have its ordinary and popularly understood meaning. See, *e.g.*, *Hill*, 409 Ill. App. 3d at 454. "Primarily" is defined as "[a]t first; originally," and also "[c]hiefly; principally." American Heritage Dictionary 983 (2d coll. ed. 1985); see also *Gaudina v. State Farm Mutual Automobile Insurance Co.*, 2014 IL App (1st) 131264, ¶ 22, 8 N.E.3d 588. Thus, we define "primarily" as used in section 5-5-5(c) of the Act as "chiefly or principally" rather than as meaning a specific percentage of use or some other mathematical formula.

¶ 48        Therefore, landowners' claim that the proposed pipeline was not primarily for the benefit, use, or enjoyment of the public because Marathon controls two-thirds of the shipping capacity of the proposed pipeline fails because it does not comport with the plain and ordinary meaning of the term "primarily." We will not depart from the plain meaning of the word "primarily" by reading into that term exceptions, limitations, or conditions that conflict with the legislature's intent. See, *e.g.*, *Hill*, 409 Ill. App. 3d at 454. Accordingly, the trial court did not err in interpreting section 5-5-5(c) of the Act.


¶ 49                              4. *The Relevancy of Marathon's Involvement*

¶ 50        Landowners argue that to "determine whether the SAX pipeline is 'primarily for the benefit, use, or enjoyment of the public' the trial court should have examined who was using the capacity of the pipeline, and whether those entities who were using the pipeline were part of the public or not." We disagree.


¶ 51                                               a. Applicable Law

¶ 52        The State has the right to acquire private property by eminent domain as long as (1) the taking is for a public use and (2) just compensation is paid to the landowner. Ill. Const. 1970, art. I, § 15. The public use requirement can still be satisfied even if the State transfers the property to a private entity. *Southwestern Illinois Development Authority v. National City Environmental, L.L.C.*, 199 Ill. 2d 225, 235, 768 N.E.2d 1, 7 (2002). Likewise, the public use

requirement can still be met even if the public does not have the right to enter or use the condemned property. *City of Chicago v. Eychaner*, 2015 IL App (1st) 131833, ¶ 52, 26 N.E.3d 501.

¶ 53    The State may also delegate the power of eminent domain to railroads, pipeline companies, and other entities as long as the public is the primary intended beneficiary. *Illinois Power Co. v. Lynn*, 50 Ill. App. 3d 77, 78, 365 N.E.2d 264, 265 (1977). Section 5-5-5(c) of the Act provides that to acquire private property for a pipeline, the condemning authority must prove by clear and convincing evidence that the acquisition of property is (1) primarily for the benefit, use, or enjoyment of the public and (2) necessary for a public purpose. 735 ILCS 30/5-5-5(c) (West 2014). When the Commission grants a certificate or makes a finding of public convenience and necessity for the acquisition of property for private ownership or control, a rebuttable presumption arises that such acquisition is (1) primarily for the benefit, use, or enjoyment of the public and (2) is necessary for a public purpose. *Id.* In a traverse hearing, a property owner can challenge the presumptions of public use and necessity. *City of Chicago v. Midland Smelting Co.*, 385 Ill. App. 3d 945, 965, 896 N.E.2d 364, 383 (2008). The burden is on the property owner to rebut these presumptions by clear and convincing evidence. *Kuerth I*, 2016 IL App (4th) 150519, ¶ 140. To rebut these presumptions, a landowner must introduce relevant evidence demonstrating that (1) the current supply of applicable energy already exceeds the capacity of refineries, (2) the proposed pipeline would not lower the price of energy, or (3) other compelling economic or policy considerations showing that the public, in the aggregate, would not be the primary beneficiary of the proposed pipeline. See *Lakehead Pipeline Co. v. Illinois Commerce Comm'n*, 296 Ill. App. 3d 942, 947, 957-58, 696 N.E.2d 345, 348, 355-56 (1998).

¶ 54    No bright-line test exists to determine whether the public is the primary beneficiary of a taking. *Southwestern Illinois Development Authority*, 199 Ill. 2d at 240. Rather, to determine whether the public is the primary beneficiary of a taking, courts look to (1) the actual motives behind the taking and (2) whether the taking was an independent and legitimate decision to further a planned public use. *Id.* at 240-41; *Midland Smelting Co.*, 385 Ill. App. 3d at 971-72. A reviewing court will likely find a taking to be constitutional when the taking is done in furtherance of a sound economic development plan. *Eychaner*, 2015 IL App (1st) 131833, ¶ 71. An incidental benefit to private interests is not relevant as long as the primary benefit inures to the public. *People ex rel. City of Urbana v. Paley*, 68 Ill. 2d 62, 76, 368 N.E.2d 915, 921 (1977).

¶ 55                                        b. Analysis

¶ 56    In this case, despite landowners' arguments to the contrary, the trial court was not required to examine who would be using the pipeline, the extent of any particular company's use of the pipeline, whether those companies were part of the public, or who would financially benefit from the proposed pipeline. See *Eychaner*, 2015 IL App (1st) 131833, ¶ 52; *Paley*, 68 Ill. 2d at 75-76. This is because the legislature has determined that pipelines are in the public interest and that it is efficient for private companies, rather than the government, to construct and maintain these pipelines. See 735 ILCS 30/5-5-5(c) (West 2014). Moreover, the decision to grant private companies the power of eminent domain to construct pipelines is well supported by historical custom. See Alexandra B. Klass & Danielle Meinhardt, *Transporting Oil and Gas: U.S. Infrastructure Challenges*, 100 Iowa L. Rev 947, 953-980 (2015). Once the

legislature has determined, as it did by enacting section 5-5-5(c) of the Act, to let private companies build pipelines, it is no longer relevant which company benefits or the extent to which any particular company benefits. Instead, the trial court was required only to determine whether the landowners presented clear and convincing evidence to rebut the presumptions of public use and public necessity. *Kuerth I*, 2016 IL App (4th) 150519, ¶ 140.

¶ 57 Thus, despite landowners' claims, Marathon's involvement—or the extent of that involvement—was not relevant in determining whether the pipeline is primarily for the benefit, use, or enjoyment of the public. Thus, landowners' argument about Marathon's involvement is without merit.

¶ 58 Because we conclude that Marathon's involvement was not relevant to landowners' efforts to rebut the public use and necessity presumptions, we also conclude that the trial court did not err by denying landowners' discovery request seeking information on who would be using the pipeline.

¶ 59       *5. The Decision Was Not Against the Manifest Weight of the Evidence*

¶ 60 Landowners further assert that the trial court erred because they presented "clear and convincing evidence" at the traverse hearing to overcome the presumptions of public use and necessity. We disagree.

¶ 61            a. Standard of Review

¶ 62 A trial court's finding that the evidence was insufficient to overcome a presumption will not be reversed on appeal unless the decision is contrary to the manifest weight of the evidence. *In re Marriage of Solomon*, 2015 IL App (1st) 133048, ¶ 19, 29 N.E.3d 560. A decision is contrary to the manifest weight of the evidence when the opposite conclusion is apparent or when the decision is unreasonable, arbitrary, or not based on the evidence. *Vaughn v. City of Carbondale*, 2016 IL 119181, ¶ 23, 50 N.E.3d 643.

¶ 63            b. Analysis

¶ 64 As noted earlier, section 5-5-5(c) of the Act provides that to acquire private property for private benefit or control via eminent domain, the condemning authority must prove by clear and convincing evidence that the acquisition of the property is (1) primarily for the benefit, use, or enjoyment of the public and (2) necessary for a public purpose. 735 ILCS 30/5-5-5(c) (West 2014). When the Commission grants a certificate or makes a finding of public convenience and necessity for an acquisition of property for private ownership or control, a rebuttable presumption arises that such acquisition is (1) primarily for the benefit, use, or enjoyment of the public and (2) is necessary for a public purpose. *Id.* In a traverse hearing, a property owner must present clear and convincing evidence to rebut the presumptions of public use and public necessity. *Kuerth I*, 2016 IL App (4th) 150519, ¶ 140.

¶ 65 Here, landowners presented no relevant evidence to rebut those presumptions. Instead, the only evidence landowners presented was evidence showing that private companies would own and benefit from a proposed pipeline. However, as we emphasize again, who owns or benefits from a proposed pipeline is not relevant evidence to rebut the applicable presumptions. Because landowners did not introduce any relevant evidence to show that the public, in the aggregate, would not be the primary beneficiary of the pipeline, they utterly failed to meet their

burden to rebut the presumptions of public use and necessity. Accordingly, the trial court's decision was not contrary to the manifest weight of the evidence.

### B. Trial Court's Denial of Sanctions

¶ 67    IEPC argues that the trial court erred in denying its motions for sanctions against landowners' attorney. We disagree.

¶ 68    The decision whether to award sanctions is within the sound discretion of the trial court and will not be reversed absent an abuse of discretion. *Olsen v. Staniak*, 260 Ill. App. 3d 856, 863, 632 N.E.2d 168, 175 (1994). The trial court is in the best position to determine whether sanctions are warranted and abuses its discretion only if no reasonable person would adopt the court's decision. *Villaverde v. IP Acquisition VIII, LLC*, 2015 IL App (1st) 143187, ¶ 69, 39 N.E.3d 144.

¶ 69    In this case, the trial court denied sanctions because it believed that landowners' attorney was complying with our remand instructions. Considering the complexity of this area of law and our lengthy remand instructions, we conclude that the trial court's decision was not an abuse of discretion. *Olsen*, 260 Ill. App. 3d at 863.

### C. Rule 375(b) Sanctions

¶ 71    Finally, IEPC moved for sanctions pursuant to Rule 375(b), which we ordered taken with the case. IEPC argues that landowners' attorney filed a frivolous appeal because they have raised similar "private pipeline" arguments in other cases. We disagree.

¶ 72    A reviewing court may impose sanctions against a party for an appeal that is either frivolous or taken for an improper purpose. Ill. S. Ct. R. 375(b) (eff. Feb. 1, 1994). An appeal is frivolous when (1) it is not reasonably well-grounded in fact; (2) not warranted by existing law; (3) is not a good-faith argument for the extension, modification, or reversal of existing law; or (4) a reasonable attorney would not have brought the appeal. *Goldberg v. Michael*, 328 Ill. App. 3d 593, 600, 766 N.E.2d 246, 252 (2002). An appeal is for an improper purpose when the primary purpose of the appeal is to delay, harass, or cause needless expense. *Id.* at 600-01. Rule 375(b) sanctions are penal in nature and should only be applied to cases falling strictly within the language of the rule. *Belfour v. Schaumburg Auto*, 306 Ill. App. 3d 234, 244, 713 N.E.2d 1233, 1240 (1999).

¶ 73    Although landowners ultimately lost at trial and on appeal, we conclude that a reasonable attorney could have brought this appeal because this area of law was unsettled until this opinion. For those reasons, we also conclude that the appeal was not brought for the primary purpose of delaying, harassing, or causing needless expense.

¶ 74    In so concluding, we note that this opinion answers questions that were left unanswered in *Kuerth I*. Given that these same lawyers are involved in other pending cases concerning the SAX pipeline, any lawyer who hereafter makes arguments that we have rejected in this opinion would be exposing himself or herself to possible sanctions pursuant to Rule 137 or Rule 375 or both.

### IV. Conclusion

¶ 76    For the reasons stated, we affirm the trial court's judgment and decline IEPC's request for sanctions. As a final matter, we thank the trial court for its patience and diligence in this

complicated matter.

¶ 77          Affirmed.