2019 IL App (4th) 150346
NOS. 4-15-0346, 4-15-0349, 4-15-0360 cons.

FILED
October 16, 2019
Carla Bender
4th District Appellate
Court, IL

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| ENBRIDGE PIPELINE (ILLINOIS), LLC, | ) | Appeal from the |
| n/k/a Illinois Extension Pipeline Company, LLC, | ) | Circuit Court of |
|       Plaintiff-Appellee, | ) | McLean County |
|       v.    (No. 4-15-0346) | ) | No. 14ED5 |
| CARLA S. TEMPLE, as Trustee of the Carla S. | ) | |
| Temple Family Trust; NONRECORD CLAIMANTS; | ) | |
| and UNKNOWN OWNERS, | ) | |
|       Defendants-Appellants. | ) | |
| _____ | ) | |
| ENBRIDGE PIPELINE (ILLINOIS), LLC, | ) | No. 14ED8 |
| n/k/a Illinois Extension Pipeline Company, LLC, | ) | |
|       Plaintiff-Appellee, | ) | |
|       v.    (No. 4-15-0349) | ) | |
| TERRY ADREON, as Trustee of the Residuary Trust | ) | |
| Under the Last Will and Testament of Robert H. Davis; | ) | |
| NONRECORD CLAIMANTS; and UNKNOWN | ) | |
| OWNERS, | ) | |
|       Defendants-Appellants. | ) | |
| _____ | ) | |
| ENBRIDGE PIPELINE (ILLINOIS), LLC, | ) | No. 14ED28 |
| n/k/a Illinois Extension Pipeline Company, LLC, | ) | |
|       Plaintiff-Appellee, | ) | |
|       v.    (No. 4-15-0360) | ) | |
| JPR FAMILY PARTNERSHIP LP, NONRECORD | ) | The Honorable |
| CLAIMANTS, and UNKNOWN OWNERS, | ) | Paul G. Lawrence, |
|       Defendants-Appellants. | ) | Judge Presiding. |

JUSTICE STEIGMANN delivered the judgment of the court, with opinion.
Presiding Justice Holder White and Justice Turner concurred in the judgment and
opinion.

**OPINION**

¶ 1    In April 2014, the Illinois Commerce Commission (Commission) granted

plaintiff, Enbridge Pipeline (Illinois), LLC, now known as the Illinois Extension Pipeline Company, LLC (IEPC), eminent-domain authority to acquire easements over certain real estate for the planned construction of an approximately 170-mile liquid petroleum (oil) pipeline known as the Southern Access Extension (SAX project). In the summer of 2014, IEPC filed separate complaints for "condemnation of permanent and temporary easements for common-carrier pipeline" (condemnation complaints) against defendants (1) Carla S. Temple (Temple) (McLean County case No. 14-ED-5 and this court's case No. 4-15-0346); (2) Terry Adreon (Adreon) (McLean County case No. 14-ED-8 and this court's case No. 4-15-0349); and (3) JPR Family Partnership LP (JPR) (McLean County case No. 14-ED-28 and this court's case No. 4-15-0360) (collectively, landowners). In September 2014, landowners filed a traverse motion challenging IEPC's right to build the pipeline. Ultimately, the trial court denied landowners' traverse motion and awarded them just compensation.

¶ 2        In their first appeal to this court, landowners argued that the trial court improperly conducted the traverse hearing. We agreed and remanded for the trial court to reopen discovery and allow landowners the opportunity to file a new traverse motion. On remand, landowners filed a discovery request that the trial court denied. Landowners also filed a traverse motion that the trial court denied. At the request of IEPC, the trial court then imposed sanctions against landowners' attorney, Mercer Turner, pursuant to Illinois Supreme Court Rule 137 (eff. July 1, 2013).

¶ 3        Landowners appeal, arguing that the trial court's denial of their discovery request should be reversed. Turner also appeals, arguing that the trial court's imposition of Rule 137 sanctions against him was an abuse of discretion. IEPC argues that we should affirm the trial court's rulings and impose sanctions against Turner pursuant to Illinois Supreme Court Rule 375

(eff. Feb. 1, 1994). We agree with IEPC.

¶ 4                                   I. BACKGROUND

¶ 5                             A. The First Traverse Hearing

¶ 6          In April 2014, the Commission granted IEPC eminent-domain authority to

acquire easements for the planned construction of a pipeline. (See *Enbridge Pipeline (Illinois),*

*LLC v. Temple*, 2017 IL App (4th) 150346, ¶¶ 7-52, 80 N.E.3d 784 (*Temple I*), for a complete

summary of the procedural history of this case). In the summer of 2014, IEPC filed

condemnation complaints against landowners to (1) obtain a right-of-way and easement interests

in landowners' properties and (2) determine just compensation to be paid to landowners.

¶ 7          In August 2014, landowners filed a "request to produce documents" pertaining to

the SAX project on the following topics: (1) project planning and specifications, (2) safety plans,

(3) oil spill projections, (4) shipping commitments, (5) ownership interests, and (6) regulatory

and governmental reporting not involving the Commission. IEPC objected and argued that

discovery was not necessary because a traverse motion is essentially a motion to dismiss under

section 2-619(a)(9) of the Code of Civil Procedure. 735 ILCS 5/2-619(a)(9) (West 2014). The

trial court agreed with IEPC and sustained its objection.

¶ 8          In September 2014, landowners filed a traverse motion challenging IEPC's right

to build the pipeline. (A traverse motion is filed to oppose the condemnation of private property

and challenges (1) the rebuttable presumption of public use and public necessity and (2) the

presumption that the condemner negotiated in good faith. *Enbridge Pipeline (Illinois), LLC v.*

*Hoke*, 2017 IL App (4th) 150544, ¶¶ 133-34, 80 N.E.3d 807.)

¶ 9          In November 2014, the trial court conducted a hearing on landowners' traverse

motion. Landowners argued that their "principal defense" was the relationship between IEPC

and Marathon Petroleum Company—a co-owner of the pipeline and the expected transporter of the oil. Landowners explained that they were not able to fully develop this argument because the court had denied their discovery request. In response, IEPC argued that a traverse motion is essentially a section 2-619(a)(9) motion to dismiss. 735 ILCS 5/2-619(a)(9) (West 2014). IEPC further argued that landowners were required—but failed—to raise an affirmative matter that defeated IEPC's condemnation complaints. Ultimately, the trial court agreed with IEPC and denied landowners' traverse motions.

¶ 10　　　　In February 2015, IEPC filed a motion for summary judgment, arguing that no genuine issue of material fact existed regarding the just compensation it should pay to landowners for its right-of-way and easement interests. 735 ILCS 5/2-1005 (West 2014). In March 2015, the trial court granted IEPC's summary judgment motion and awarded compensation to the landowners.

¶ 11　　　　　　　　　　　　B. The First Appeal

¶ 12　　　　Landowners appealed to this court and raised numerous issues. In July 2017, we vacated the trial court's order because the trial court failed to conduct a proper traverse hearing. *Temple I*, 2017 IL App (4th) 150346, ¶¶ 94-95. In reaching this result, we wrote the following:

> "We reject the notion that *** *all* traverse hearings are akin to a motion to dismiss ***. ***
>
> 　　*** We *** reiterate and reaffirm our holding that a traverse hearing is a limited proceeding that affords a landowner the first and only opportunity to challenge a condemnor's authority and, thus, 'is akin to a hybrid proceeding in which specific presumptions must be rebutted by landowners challenging the condemnation filing at issue.' " *Id.* ¶¶ 92-93 (quoting *Enbridge Energy (Illinois),*

*L.L.C. v. Kuerth*, 2016 IL App (4th) 150519, ¶ 169, 69 N.E.3d 287 (*Kuerth I*)).

¶ 13    The *Temple I* court also described the proper scope of a traverse hearing as follows:

> "IEPC enjoyed the rebuttable presumptions that its interests in landowners' respective tracts of land were (1) primarily for the benefit, use, or enjoyment of the public and (2) necessary for a public purpose. In addition to those presumptions, the Commission determined that eminent-domain authority in IEPC's favor was warranted because good-faith negotiations between IEPC and landowners had failed. Thus, landowners were entitled to present relevant evidence to rebut these specific presumptions and to refute the good-faith finding. We note, however, that in their respective *** traverse motions, landowners disregarded the limited scope of the traverse hearing by attempting to litigate anew the Commission's certification and eminent-domain decisions, which this court affirmed on appeal. *** Such issues are not the proper subjects of a traverse hearing, and on remand, the trial court should decline to consider them.
>
> Based on the aforementioned discussion of the proper scope of a traverse hearing, the trial court on remand should consider only two matters, which are landowners' claims challenging (1) the rebuttable presumptions of public use and public necessity and (2) the Commission's determination as to good faith ***."
> *Id.* ¶¶ 100-01.

¶ 14    In *Temple I*, this court also instructed the trial court on remand to assume control of the discovery process as follows:

> "Consistent with the limited nature of a traverse motion ***, we direct the

trial court to assume control of the discovery proceedings in the instant case by requiring any discovery request to set forth with specificity (1) the information the party seeks, (2) the alleged source of that information, and (3) the relevance of the information sought, given the limited remand in this case. The aforementioned listing, however, does not preclude the court from imposing further discovery requirements.

The trial court should determine whether any discovery sought is appropriate and should deny any request to depose or submit interrogatories that seek information the court deems irrelevant or that already exists in the record or is [already] in the possession of the party making the discovery request. If the court determines that discovery—strictly limited to the aforementioned issues—is warranted, it shall actively supervise to ensure discovery occurs in an efficient and expeditious manner." *Id.* ¶¶ 103-04.

¶ 15 Accordingly, in July 2017, we remanded the case for the trial court to supervise the discovery process and to conduct a new traverse hearing in accordance with our instructions. See *id.* ¶¶ 97-114. This court retained jurisdiction to review claims arising from the second traverse hearing. *Id.* ¶ 113.

¶ 16 C. The Second Discovery Request

¶ 17 On remand in February 2018, Turner requested to depose the following individuals:

"[(1)]. A Representative Deponent from Marathon who is familiar with the specifics of the joint venture regarding ownership, capital contributions made by Marathon, costs of operation paid by Marathon, all agreements with Enbridge and

volume of shipping by Marathon for the pipeline at issue in this case.

[(2)]. A Representative Deponent from Plaintiff who has knowledge of the specifics of the shipping by parties other than Marathon for the pipeline at issue in this case, including the volumes shipped and when the shipping occurred.

[(3)]. A Representative Deponent from Plaintiff who is familiar with the specifics of the width of pipeline right-of-way necessary for use, maintenance, and operation of the pipeline in this case.

[(4)]. A Representative Deponent from Plaintiff who was specifically in charge of the prefiling offer in this case and whether the Defendants were given a prefiling offer.

[(5)]. A Representative Deponent from Plaintiff who is knowledgeable of the pipeline maintenance of the pipeline at issue in this case.

[(6)]. A Representative Deponent from Plaintiff who is knowledgeable of the pipeline maintenance of the Illinois leg of the Southern Access pipeline from Wisconsin-Illinois border to Pontiac, Illinois."

¶ 18        Turner also requested the following documents:

"[(1)]. All agreements between Marathon and Enbridge regarding the pipeline at issue, including but not limited to shipping records of the volumes shipped by Marathon and when the shipping occurred.

[(2)]. Record of all repairs made to the Southern Access Pipeline from Wisconsin-Illinois border to Pontiac, Illinois, excluding the pumps added to increase the pressure to increase the volume.

[(3)]. Any documents showing proof of mailing and receipt by the three

Defendants of the prefiling offer, together with the prefiling offer, unless it is in the record and the Plaintiff is resting on the mailing and delivery of the mailing and receipt of the prefiling offer information contained in the record.

[(4)]. Copy of documents used by the Plaintiff to mail and confirm the delivery of the prefiling offer regarding the three Defendants.

[(5)]. Records of all shipping by a party other than Marathon which contain the name of the shipper, the volume shipped by that shipper, and when the shipment occurred."

¶ 19 On February 20, 2018, IEPC filed an objection to the discovery request, in which it argued that (1) the requested information was irrelevant, (2) the requested information was already in landowners' possession, and (3) the discovery request failed to comply with this court's remand instructions.

¶ 20 D. The Publication of *Kuerth II*

¶ 21 On February 27, 2018, this court rendered its opinion in *Enbridge Energy (Illinois), L.L.C. v. Kuerth*, 2018 IL App (4th) 150519-B, 99 N.E.3d 210 (*Kuerth II*), which involved a different attorney and different landowners, but dealt with the same pipeline dispute as in this case and with the involvement of Marathon Oil. In pertinent part, this court in *Kuerth II* reasoned as follows:

"In this case, despite landowners' arguments to the contrary, the trial court was not required to examine who would be using the pipeline, the extent of any particular company's use of the pipeline, whether those companies were part of the public, or who would financially benefit from the proposed pipeline. [Citations.] This is because the legislature has determined that pipelines are in the

public interest and that it is efficient for private companies, rather than the government, to construct and maintain these pipelines. See 735 ILCS 30/5-5-5(c) (West 2014). *** [I]t is no longer relevant which company benefits or the extent to which any particular company benefits. Instead, the trial court was required only to determine whether the landowners presented clear and convincing evidence to rebut the presumptions of public use and public necessity. *Kuerth I*, 2016 IL App (4th) 150519, ¶ 140[, 69 N.E.3d 287].

Thus, despite landowners' claims, Marathon's involvement—or the extent of that involvement—was not relevant in determining whether the pipeline is primarily for the benefit, use, or enjoyment of the public. Thus, landowners' argument about Marathon's involvement is without merit.

Because we conclude that Marathon's involvement was not relevant to landowners' efforts to rebut the public use and necessity presumptions, we also conclude that the trial court did not err by denying landowners' discovery request seeking information on who would be using the pipeline." *Kuerth II*, 2018 IL App (4th) 150519-B, ¶¶ 56-58.

¶ 22   The *Kuerth II* court warned that "any lawyer who hereafter makes arguments that we have rejected in this opinion would be exposing himself or herself to possible sanctions pursuant to Rule 137 or Rule 375 or both." *Id.* ¶ 74.

¶ 23                      E. The Denial of Discovery

¶ 24   On February 28, 2018, the trial court conducted a hearing on defendant's discovery request. At the hearing, Turner acknowledged that he had received a copy of *Kuerth II*. Notwithstanding that, Turner argued as follows:

"[I]t was announced that a joint venture between Marathon and [IEPC] was occurring for the SAX Pipeline \*\*\*. \*\*\* And so I believe it's appropriate that the request we made regarding Marathon be allowed. That will also allow us to develop whether a public use existed \*\*\*."

¶ 25    Turner also requested information regarding IEPC's mailing of its final offer to landowners. In support of this request, Turner stated as follows:

"After [IEPC] applied for eminent domain authority, I believe there was only one offer made, and that was the offer we're talking about being mailed, and that was May 19, 2014. The only reason [why] I can even identify it then is based on some of the thousands of pages that [IEPC] had previously filed in this case."

¶ 26    After a lengthy hearing, the trial court ruled as follows:

"The specific objections that have been made by [IEPC] today, number one, with regard to Marathon, I will sustain those objections. It is clear that in the *Kuerth* decision that came out yesterday, that that same issue arose in that case, and that Marathon is not a proper discovery [topic], nor is it a proper subject at a traverse hearing.

With regard to maintenance and repairs, once again, the Court notes that these maintenance repairs are not related to specific or respective properties, but in general. \*\*\* And in *Kuerth* they obviously discussed the fact that other pipelines were not relevant to this particular pipeline issue.

The third issue of pre-filing offers, the Court, after reviewing exhibits tendered today by [IEPC] does find that the information already does exist or is in the possession of Mr. Turner or his clients who are making that discovery request.

Likewise, with regard to the width of the easement, that information has been

pointed out today through the exhibits offered today and shown on the screen.

Once again, also show that that information is in the possession of Mr. Turner and

or his clients."

¶ 27 Accordingly, the trial court sustained IEPC's objection and denied landowners' discovery request. When the court was scheduling the traverse hearing, Turner stated that he "believe[d] that there should be a timely submission of evidence that we do have, Judge, for you to evaluate."

¶ 28 F. The Second Traverse Motion

¶ 29 In May 2018, landowners filed their second traverse motion. Landowners essentially sought to relitigate the trial court's denial of their discovery request and argued that "since discovery has been denied, it is impossible for the Landowners to present a traverse claim that is inside the scope of the Appellate Court['s] remand decision." Within their motion, landowners never argued that IEPC failed to negotiate in good faith. Regarding public use, landowners argued that "the public benefit of the revised SAX project was not supported by expert economic opinion" and that the "movement of crude oil by pipeline from one location to another does not inherently create a public benefit ***." Landowners also argued as follows:

"[T]he written contract between Marathon and [IEPC] has not been disclosed in

either discovery or filed in the record in this case or any of the [other] ***

proceedings for the SAX pipeline. *** These documents would be probative of

the control which Marathon has over the SAX pipeline operation, how long this

control lasts, and whether this control impairs public shipping by others.

Furthermore, the Landowners sought discovery for that portion of the SAX

- 11 -

pipeline capacity which was reserved for other shippers. Simply by reserving a portion of the SAX pipeline capacity for shipping by others does not create a public benefit, if not used by others. The demand for the use of the non-Marathon portion of the pipeline would likely be probative of the public purpose or the absence thereof."

¶ 30 In July 2018, the trial court conducted a traverse hearing. Turner stated that his "clients have determined that due to their inability to conduct discovery that they are unable to present a Phase One showing [at the traverse hearing], I recommend that Your Honor make a report called for in the Remand, and send it back to the Fourth District based on the status of things." However, prior to conceding that he could not prevail at the traverse hearing, Turner indirectly argued that the pipeline was not in the public benefit. To this point, Turner stated as follows:

"The fact that Marathon is a part owner, the fact that Marathon paid 550 million dollars for an interest in the pipeline, the fact that Marathon has a long-term exclusive shipping contract are facts that were brought out *** by my efforts and the efforts of another group of landowners who had a similar interest in the case. For example, we really don't know what the terms of the shipping contract, what it provides. It was never disclosed, and hasn't been disclosed since. We don't know what the terms are, the co-ownership arrangement ***. *** So, you know, it's things like that that would have been very useful in discovery, and without them it's impossible for us to follow through with what is contemplated by *Kuerth II*."

¶ 31 IEPC argued that (1) Turner's argument regarding Marathon's involvement in the

pipeline was refuted by *Kuerth II* and (2) it negotiated in good faith. IEPC also noted that "on February 28th of 2018, Attorney Turner appeared before this court and requested 60 days to present what he referred to as evidence that he did have. So today as we're here for a stage one [traverse hearing], Attorney Turner has changed his story" and now argues that "it is now impossible for the landowners to present their *** evidence."

¶ 32    The trial court denied the traverse motion, explaining as follows:

"In this particular case, *** the Fourth District asked me to decide two issues. The good faith issue, there certainly hasn't been anything presented today to show, have any evidence to refute the deference afforded [to] the Commission's good faith determination. As [IEPC] pointed out, there were final offers made of $171,000 which was significantly higher than the judgment of $45,000 that the court entered at the summary judgment proceeding. The court does find that *** there were good faith negotiations, and while the negotiations from the landowners was apparently not in good faith with a 20 million dollar demand, and as pointed out, their experts used improper factors which this court has found and so many other courts have found that those factors were improper, including the oil spills and so forth.

The second issue of course is whether or not there has been clear and convincing evidence to rebut the presumption of public use and public necessity. Once again, there hasn't been any evidence presented. Once again, Mr. Turner is requesting to delve back into the Marathon issue which *Kuerth II* has said is not relevant to these proceedings, and it's clear that the *Temple* decision *** talked

about all of the areas that we were not to litigate anew, and so that apparently is essentially what is still trying to be litigated anew, some of those issues, and the court will not allow that.

So it's clear that there hasn't been any evidence presented today to rebut the presumption of public use, and there hasn't been any evidence to refute the substantial deference afforded to the Commission's good faith determination."

¶ 33                               G. The Motion for Rule 137 Sanctions

¶ 34        In July 2018, IEPC filed a motion for sanctions pursuant to Illinois Supreme Court Rule 137 (eff. July 1, 2013) in which it argued that Turner's discovery request and traverse motion were contrary to existing law and not well-grounded in fact. In August 2018, Turner filed a response in which he argued that the imposition of sanctions would be inappropriate because his arguments were supported by the law and the facts.

¶ 35        In October 2018, the trial court conducted a hearing on IEPC's motion for sanctions. The court found that Turner violated Rule 137 because his arguments were (1) contradicted by *Kuerth II* and (2) were not well-grounded in fact. In November 2018, IEPC filed a verified accounting of fees and expenses and requested $146,137.95 in fees and costs. In December 2018, Turner filed a motion to reconsider the imposition of sanctions. In January 2019, the trial court conducted another hearing, denied Turner's motion to reconsider, and imposed sanctions upon Turner, explaining as follows:

"[T]here has been sufficient evidence presented by [IEPC's attorney] and his firm that $146,137.95, plus the work that was done today, could be imposed, but *** I will not do that because I'm going to exercise the Court's discretion based upon everything that I have seen in this case ***. And in exercising that discretion, I

- 14 -

am going to impose attorney's fees in the amount of $25,000, plus interest at the rate of nine percent ***."

¶ 36 This appeal followed.

¶ 37 II. ANALYSIS

¶ 38 Landowners appeal, arguing that the trial court's denial of their discovery request should be reversed. Turner also appeals and argues that the trial court's imposition of Rule 137 sanctions was an abuse of discretion. IEPC argues that we should affirm the trial court's rulings and impose sanctions upon Turner pursuant to Rule 375. We address these issues in turn.

¶ 39 A. The Denial of Discovery

¶ 40 Landowners argue that the trial court erred by denying their discovery requests. Specifically, landowners argue that Marathon's involvement in the pipeline was relevant to whether the pipeline is primarily for the benefit, use, or enjoyment of the public. We disagree.

¶ 41 1. *The Applicable Law*

¶ 42 Except as otherwise provided, "a party may obtain by discovery full disclosure regarding any matter relevant to the subject matter involved in the pending action, *** including the existence, description, nature, custody, condition, and location of any documents or tangible things, and the identity and location of persons having knowledge of relevant facts." Ill. S. Ct. R. 201(b)(1) (eff. July 30, 2014).

¶ 43 Discovery requests that are disproportionate in terms of burden or expense should be avoided. *Carlson v. Jerousek*, 2016 IL App (2d) 151248, ¶ 27, 68 N.E.3d 520. Furthermore, in order to prevent abuse, "discovery is limited to disclosure of *relevant evidence* or that which will lead to such evidence." (Emphasis added.) *In re Marriage of Turano Solano*, 2019 IL App (2d) 180011, ¶ 39, 124 N.E.3d 1097. "For purposes of discovery, relevance includes not only that

which is admissible at trial, but also that which leads to admissible evidence." *Manns v. Briell*, 349 Ill. App. 3d 358, 361, 811 N.E.2d 349, 352 (2004). However, in the cases involving this pipeline litigation, this court has previously limited the scope of discovery as it applies to traverse hearings as follows:

> "Another difference exists between a typical trial and a traverse hearing. In preparation for a typical trial, discovery 'includes not only what is admissible at trial, but also that which leads to admissible evidence.' *Ramos v. Kewanee Hospital*, 2013 IL App (3d) 120001, ¶ 76, 992 N.E.2d 103. Given the limited purpose of a traverse hearing, such broad discovery is a wasteful use of resources that would serve only to complicate, confuse, and delay the proceedings (as this case clearly shows)." *Kuerth I*, 2016 IL App (4th) 150519, ¶ 170.

¶ 44 In our remand instructions in this case, we stated that the trial court "should permit IEPC to challenge landowners' additional requests for discovery by demonstrating that the information sought is either irrelevant to the traverse proceedings or cumulative because the additional discovery sought already appears in the record or is in the possession of landowners or their counsel." *Temple I*, 2017 IL App (4th) 150346, ¶ 105. We further stated that the trial court should require "any discovery request to set forth with specificity (1) the information the party seeks, (2) the alleged source of that information, and (3) the relevance of the information sought, given the limited remand in this case." *Id.* ¶ 103.

¶ 45 "A trial court is given great latitude in determining the scope of discovery, and discovery orders will not be disturbed absent an abuse of discretion." *Briell*, 349 Ill. App. 3d at 361. The abuse of discretion standard "is the most deferential standard of review recognized by the law; a decision will be deemed an abuse of discretion only if the decision is unreasonable and

- 16 -

arbitrary or where no reasonable person would take the view adopted by the [trial] court." (Internal quotation marks omitted.) *Pekin Insurance Co. v. St. Paul Lutheran Church*, 2016 IL App (4th) 150966, ¶ 69, 78 N.E.3d 941. "Where reasonable minds could differ on the merits of the arguments presented, we will defer to the trial court." *Salvator v. Air & Liquid Systems Corp.*, 2017 IL App (4th) 170173, ¶ 66, 92 N.E.3d 529.

¶ 46                                    2. *This Case*

¶ 47            In this case, landowners requested information relating to Marathon's involvement in the pipeline. However, prior to the trial court's denial of landowners' discovery request, this court concluded that "Marathon's involvement—or the extent of that involvement— was not relevant in determining whether the pipeline is primarily for the benefit, use, or enjoyment of the public." *Kuerth II*, 2018 IL App (4th) 150519-B, ¶ 57. Likewise, this court reasoned that "[b]ecause we conclude that Marathon's involvement was not relevant to landowners' efforts to rebut the public use and necessity presumptions, we also conclude that the trial court did not err by denying landowners' discovery request seeking information on who would be using the pipeline." *Id.* ¶ 58. Following that decision, the trial court in this case denied landowners' discovery requests as they related to Marathon's involvement in the pipeline.

¶ 48            On appeal, landowners argue that they "should be free to discover all of the written contractual provisions between Marathon and [IEPC] regarding the pipeline" because "there is one dominant private benefit, accruing to the dominant shipper and co-owner of the project, who contracted to have a significant exclusive shipping access to the exclusion of all others." This argument is completely without merit. As we said in *Kuerth II*, Marathon's involvement was not relevant when determining whether the pipeline is primarily for the benefit, use, or enjoyment of the public. *Id.* Accordingly, we conclude that the trial court did not err—let

- 17 -

alone abuse its discretion—by denying landowners' discovery request. *Id.*

¶ 49　　　　Regarding the trial court's denial of landowners' other discovery requests—which requested information about the width of the pipeline, the maintenance of the pipeline, and documentation of IEPC's final offers—we likewise conclude that the trial court did not abuse its discretion. Stated simply, the trial court could have—and, on this record, should have— reasonably concluded that landowners' other discovery requests (1) did not comply with our remand instructions, (2) were irrelevant to the limited purpose of a traverse hearing, or (3) were unduly burdensome. Thus, for the reasons stated, we affirm the trial court's denial of landowners' discovery request.

¶ 50　　　　　　　B. The Trial Court's Imposition of Rule 137 Sanctions

¶ 51　　　　Turner argues that the trial court abused its discretion by imposing Rule 137 sanctions upon him. We disagree.

¶ 52　　　　　　　1. *The Applicable Law on Rule 137 Sanctions*

¶ 53　　　　Illinois Supreme Court Rule 137 (eff. July 1, 2013) authorizes the trial court to impose sanctions against a party or its attorney when a motion or pleading is "not well grounded in fact, not supported by existing law, or lacks a good-faith basis for modification, reversal, or extension of the law, or is interposed for any improper purpose." *Whitmer v. Munson*, 335 Ill. App. 3d 501, 513-14, 781 N.E.2d 618, 628 (2002). The attorney's conduct must be judged by an objective standard. *Deutsche Bank National Trust Co. v. Ivicic*, 2015 IL App (2d) 140970, ¶ 24, 46 N.E.3d 395. The purpose of Rule 137 is to prevent the filing of frivolous lawsuits. *Yunker v. Farmers Automobile Management Corp.*, 404 Ill. App. 3d 816, 824, 935 N.E.2d 630, 637 (2010).

¶ 54　　　　The appellate court will reverse a trial court's imposition of Rule 137 sanctions only if the trial court abused its discretion. *Mohica v. Cvejin*, 2013 IL App (1st) 111695, ¶ 47,

990 N.E.2d 720. We utilize this deferential standard "because the conduct at issue occurred before the trial judge, who is then in the best position to determine whether the conduct warranted penal sanctions." *Id.* ¶ 78 (Gordon, J., specially concurring). A trial court abuses its discretion only when no reasonable person would agree with its decision. *Lake Environmental, Inc. v. Arnold*, 2015 IL 118110, ¶ 16, 39 N.E.3d 992.

¶ 55                                    2. *This Case*

¶ 56          In this case, Turner requested discovery relating to Marathon's involvement in the pipeline. Turner continued to request this information *after* this court had already concluded that "Marathon's involvement—or the extent of that involvement—[is] not relevant in determining whether the pipeline is primarily for the benefit, use, or enjoyment of the public." *Kuerth II*, 2018 IL App (4th) 150519-B, ¶ 57. Furthermore, Turner affirmatively acknowledged that he had received a copy of *Kuerth II* prior to the trial court's denial of his discovery request.

¶ 57          Turner also filed a traverse motion that continued to argue that Marathon's involvement was relevant to the traverse hearing. At a hearing on the motion, Turner stated as follows:

> "The fact that Marathon is a part owner, the fact that Marathon paid 550 million dollars for an interest in the pipeline, the fact that Marathon has a long-term exclusive shipping contract are facts that were brought out *** by my efforts and the efforts of another group of landowners who had a similar interest in the case. For example, we really don't know what the terms of the shipping contract, what it provides. It was never disclosed, and hasn't been disclosed since. We don't know what the terms are, the co-ownership arrangement ***. *** So, you know, it's things like that that would have been very useful in discovery, and without

- 19 -

them it's impossible for us to follow through with what is contemplated by *Kuerth II*."

¶ 58　　Turner's repeated attempts to relitigate Marathon's involvement in the pipeline was not supported by existing law and lacked a good-faith basis for the modification, reversal, or extension of the law.

¶ 59　　Furthermore, Turner's traverse motion was not well-grounded in fact. After his discovery request was denied, Turner said that he "believe[d] that there should be a timely submission of evidence that *we do have*, Judge, for you to evaluate." (Emphasis added.) However, Turner ultimately filed a traverse motion that was "merely an explanation of why the Landowners cannot go forward in the remand proceeding at the trial level since they have been denied discovery." Turner did argue that the trial court's denial of discovery was improper because the requested information would have been "probative of the control which Marathon has over the SAX pipeline operation, how long this control lasts, and whether this control impairs public shipping by others." At the actual traverse hearing, although he conceded that he could not prevail, Turner continued to refer to Marathon's involvement with the pipeline. IEPC reminded the court that "Attorney Turner [previously] appeared before this court and requested 60 days to present what he referred to as evidence that he did have. So today as we're here for a stage one [traverse hearing], Attorney Turner has changed his story" and says, "it is now impossible for the landowners to present their *** evidence."

¶ 60　　The trial court denied the traverse motion, explaining that "there hasn't been *any evidence* presented today to rebut the presumption of public use, and there hasn't been *any evidence* to refute the substantial deference afforded to the Commission's good faith determination." (Emphasis added.)

¶ 61         In summation, Turner's conduct was (1) not well-grounded in fact, (2) not supported by existing law, and (3) lacked a good-faith basis for the modification, reversal, or extension of the law. Accordingly, we conclude that the trial court's imposition of Rule 137 sanctions was not an abuse of discretion.

¶ 62                         C. Rule 375(b) Sanctions

¶ 63         IEPC also requests that we impose sanctions upon Turner pursuant to Rule 375(b). We grant this request.

¶ 64         Illinois Supreme Court Rule 375(b) (eff. Feb. 1, 1994) empowers the appellate court to sanction an attorney if it determines that an appeal is frivolous or not taken in good faith. *Enbridge Pipeline (Illinois), LLC v. Hoke*, 2019 IL App (4th) 150544-B, ¶ 58, 123 N.E.3d 1271. An appeal is frivolous when (1) it is not reasonably well-grounded in fact; (2) it is not warranted by existing law; (3) it is not a good faith argument for the extension, modification, or reversal of existing law; or (4) a reasonable attorney would not have brought the appeal. *Id.* An appeal is not taken in good faith when the primary purpose is to delay, harass, or cause needless expense. *Id.* Whether an attorney violated Rule 375 is an objective test. *Garlick v. Bloomingdale Township*, 2018 IL App (2d) 171013, ¶ 59, 127 N.E.3d 193.

¶ 65         In this appeal, Turner has once again relitigated Marathon's involvement in the pipeline. For example, Turner argues that landowners were entitled to "information about Marathon's private benefit," including "all of the written contractual provisions between Marathon and [IEPC] regarding the pipeline ***." However, as we have stated multiple times, "Marathon's involvement—or the extent of that involvement—[is] not relevant in determining whether the pipeline is primarily for the benefit, use, or enjoyment of the public." *Kuerth II*, 2018 IL App (4th) 150519-B, ¶ 57. The *Kuerth II* court also warned that "any lawyer who

hereafter makes arguments that we have rejected in this opinion would be exposing himself or herself to possible sanctions pursuant to Rule 137 or Rule 375 or both." *Id.* ¶ 74. Accordingly, we conclude that Turner's appellate brief is not warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law.

¶ 66        We also note that Turner has repeatedly—and without citation to the record— accused the trial court of misconduct. For instance, Turner alleges that the trial court had "a desire to attack the personal belief of the Landowners' counsel, not to sanction what was filed." Turner also argued that the trial court was "making intentional[ly] lawless decisions and personally attacking an attorney who has been continuously acting reasonably. This conduct is unscrupulous." Turner further argues that "[t]he lower court's lawlessness was also likely created in collaboration with IEPC" and that "[n]o lower court would have entered the Sanction Order without some other agenda. And sadly, agendas are unlawful." Because the record in this case contains absolutely nothing to support these insulting accusations, they are completely without merit.

¶ 67        Because we conclude that Turner's appeal was not well-grounded in fact or law, we further conclude that imposing sanctions against Turner pursuant to Rule 375 is appropriate. Accordingly, we direct IEPC to file within 20 days a statement of *reasonable* expenses and attorney fees incurred as a result of this second appeal. After IEPC has done so, we will give Turner an appropriate opportunity to respond. Thereafter, this court will file a supplemental order determining the amount of the sanction to be imposed upon Turner. We further direct that Turner shall not bill or otherwise charge his clients for this expense. See *Kim v. Alvey, Inc.*, 322 Ill. App. 3d 657, 674, 749 N.E.2d 368, 382 (2001) (describing the process for imposing appellate sanctions).

¶ 68                                    D. Epilogue

¶ 69            In conclusion, we note that this court retained jurisdiction of this case and remanded to the trial court for the limited purpose of conducting a traverse hearing as we directed. After doing so, the trial court was directed to certify the record on remand and to send the case back to this court. The trial court has complied with our directions. Thus, this order fully terminates this case on the merits. We thank the trial court for its patience and diligence in this complicated matter.

¶ 70                                    III. CONCLUSION

¶ 71            For the reasons stated, we affirm the trial court's judgment.

¶ 72            Affirmed.

| | |
|---|---|
| **Cite as:** | *Enbridge Pipeline (Illinois), LLC v. Temple*, 2019 IL App (4th) 150346 |
| **Decision Under Review:** | Appeal from the Circuit Court of McLean County, Nos. 14-ED-5, 14-ED-8, 14-ED-28; the Hon. Paul G. Lawrence, Judge, presiding. |
| **Attorneys for Appellant:** | Mercer Turner, of Law Offices of Mercer Turner, P.C., of Bloomington, for appellants. |
| **Attorneys for Appellee:** | Gerald A. Ambrose and Steven Sexton, of Sidley Austin LLP, of Chicago, and John M. Spesia and Jacob Gancarczyk, of Spesia & Taylor, of Joliet, for appellees. |